ADA M. LOCKWOOD ET ALS. *vs.* ALICE C. LOCKWOOD
ET ALS.

Third Judicial District, New Haven, January Term, 1908.
BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

Those who affirm that a will duly executed by a competent testator, was obtained by the exercise of undue influence, are bound to establish by evidence the truth of that proposition.

A legal presumption of undue influence arises, however, if it appears that a close fiduciary relation existed between the testator and the principal legatee, and that the latter takes the property to the exclusion of the natural objects of the testator's bounty. Under such circumstances the proponents of the will are bound to satisfy the trier that no undue influence was in fact exerted by the principal legatee.

As a basis for this presumption of undue influence, a broad distinction is to be observed between the confidential relation which naturally exists between parent and child on the one hand, and the artificial relation of attorney and client, guardian and ward, or other closely analogous fiduciary relation between strangers; and therefore a charge which ignores this distinction and virtually directs the jury to apply the presumption of undue influence to a will by a mother in favor of her daughter, merely because of the intimate and confidential relation that existed between them, is misleading and harmful.

Argued January 22d—decided March 5th, 1908.

APPEAL from a decree of the Court of Probate for the district of Norwalk approving and admitting to probate a certain instrument in writing as the last will and testament

VOL. LXXX—33

of Sarah J. Lockwood of New Canaan, deceased, taken to the Superior Court in Fairfield County and tried to the jury before *Ralph Wheeler, J.;* verdict and judgment for the contestants setting aside certain portions of the will, and appeal by the proponents. *Error and cause remanded.*

The reasons of appeal to this court allege error (1) in the charge of the trial court to the jury; (2) in rulings upon evidence; and (3) in denying a motion for a new trial on the ground of a verdict against evidence.

*John H. Light,* with whom was *William F. Tammany,* for the appellants (proponents).

*Stiles Judson* and *Clement A. Fuller,* for the appellees (contestants).

HAMERSLEY, J. Sarah J. Lockwood, the testatrix of the will in dispute, died December 30th, 1903. Her husband, William Lockwood, died intestate in 1878, leaving her and nine children surviving him, and an estate which inventoried about $93,000. At his death the youngest of the children was about three years old, and the three elder children were of age. About $7,500 was distributed to each of the nine children, and to the widow about $20,000, and her life interest in one third of the real estate was set to her in a piece of farm land appraised at $8,000. In 1888 the testatrix received a bequest from her own sister, amounting to about $30,000. The will in dispute was executed June 27th, 1901, the testatrix then being seventy years of age. At that time the youngest child, Emily, then twenty-six years old and unmarried; Alice, then thirty-three years old and unmarried; Irving, then thirty-five years old and unmarried; and Ada, then over forty-four years old and unmarried,—lived with their mother at the home she had kept up since her husband's death. Irving had for several years been engaged in business for himself. Of the other children, Homer, then thirty years old and married, had lived in Massachusetts for upward of ten years; Stanley, then forty-one years old, had a wife and two children, and

was in business for himself; George had been dead for five years, leaving a wife and two children; Jennie E., who was older than Ada, had been married to a Mr. Green since 1880, and had one child; Lucy L., the eldest child, had been married to a Mr. Hoyt since 1882, and had two children.

The first clause of the will directed the payment of debts; the second and third devised the homestead to Alice and Emily, giving to Ada, while unmarried, a right of occupation jointly with Alice and Emily until the two latter might see fit to sell the same; the fourth bequeathed to Alice $9,000; the fifth bequeathed to Emily $9,000; the sixth bequeathed to St. Mark's Episcopal Church $2,000; the seventh gave the residue, in equal parts, to Lucy, Jennie E., Stanley, Ada, Irving, Homer, and the children of George, the bequest to Jennie E. and Stanley, however, being for life, with remainder to their children. The property thus devised and bequeathed was inventoried at about $46,000.

The will was drawn by Henry W. Gregory, then judge of probate for the district of Norwalk; it was drawn in accordance with instructions given to him by the testatrix at two or three interviews in the probate office. Alice drove her mother to Norwalk when she went there for these interviews, and remained in the probate office during most of the time her mother was conversing with Judge Gregory. At the time of execution, the testatrix was suffering from a disease which had impaired her bodily strength, and this weakness continued until her death. This will was approved and admitted to probate by the Court of Probate of Norwalk January 21st, 1904, and, on February 18th following, an appeal to the Superior Court was taken. The reasons of appeal allege that the paper admitted to probate is not the last will of the testatrix, because at the time of its execution she did not have the requisite testamentary capacity, and because she was induced to execute the will through undue influence exercised by her daughters Alice and Emily.

It appears from the record that the contestants conceded that the testatrix had sufficient mental capacity to make a will directing the payment of her debts, bequeathing $2,000 to St. Mark's Episcopal Church, and appointing her executor, and that the will in question, so far as these provisions were concerned, was validly made by the testatrix without being unduly influenced to do so; but they claimed that the second, third, fourth, fifth and seventh clauses of the will, by which a larger portion of her property was given to her daughters Alice and Emily than was given to her other children, were procured through undue influence exercised by Alice and Emily, and especially by Alice. The jury found in accordance with the claims of the contestants, and the court accepted their verdict and adjudged that the decree of the Court of Probate approving and admitting to probate said instrument be confirmed in so far as it applies to the first, sixth and eighth clauses of said will, and be set aside in so far as it applies to the second, third, fourth, fifth and seventh clauses of said will.

It appears that the only seriously contested issue of fact submitted to the jury was the one affirmed by the contestants, namely, that the testatrix was induced to insert in her will the clauses which discriminated in favor of Alice and Emily, by force of undue influence exercised by those two daughters. After proof of the execution of the will and testamentary capacity of the testatrix by the attesting witnesses, the proponents of the will rested. The contestants, in support of their affirmation of undue influence, produced as witnesses William Lockwood, Irving and Ada Lockwood, the widow of George Lockwood, Lucy Hoyt, Jennie Green and Judge Gregory. The last named witness testified that he drew the will from instructions given him by the testatrix at two or three interviews in the probate court room, and that Alice drove her mother to Norwalk for these interviews and was present in the court room when they took place. The other witnesses testified to facts from which the contestants claimed the jury should infer, in connection with the testimony of Judge Gregory

Lockwood *v.* Lockwood.

as to Alice's presence during his interviews with her
mother, that at the time of execution the testatrix was not
only physically weakened by illness, but that the natural
vigor of her mind was impaired, so that she had less power
to resist the pressure of influence; that Alice and Emily
had acquired a controlling influence over her; that Alice's
relation to her was one of special confidence and trust,
and that Alice and Emily did in fact, by the exer-
cise of their influence over their mother, constrain her
to insert in her will the objectionable clauses against
her wishes.　　　The proponents, in rebuttal, produced a
large number of witnesses, including the physicians who
had attended the testatrix in her illness, three of her
children, and five of her near relatives, who testified to
facts from which they claimed the jury should infer that
the testatrix retained during her illness her natural vigor
of mind; that she was not under the control of Alice or
Emily; that the provisions of the will, in view of the con-
dition of her children, were reasonable and natural, and
Alice and Emily had not in fact exercised any undue in-
fluence.　　　There was no direct testimony as to the actual
exercise of any influence in procuring the discriminating
provisions of the will, except that of Emily, who testified
as to her relations with her mother and that she had taken
no part in any way in the making of the will; of Alice,
who testified as to driving her mother to Norwalk and what
took place there, and that she had not attempted in any
way to influence her mother to make the discriminating
provisions; and of Judge Gregory, that at his interviews
with the testatrix he saw nothing indicating the existence
of undue influence.

Upon the close of the testimony, the contestants re-
quested the court to charge the jury as follows: "Al-
though it is the ordinary rule that the burden of proof is
on those attacking a will to prove undue influence, yet
that burden is shifted and rests upon those offering the
will for probate in case principal legatees sustain, or a
principal legatee sustains, a relation of special confidence

to the testatrix, and takes part in procuring the terms and provisions of the will, even though some one else reduces it to writing and draws up the will in form. Undue influence used and yielded to for the sake of peace or quiet, or of escaping from distress of mind, or social discomfort, or family jars or troubles, may be such undue influence if the provisions of the will are made in consequence of such influence as will warrant the jury in setting aside the will or any portion thereof that may be procured thereby, for the will and every portion of it must be the offspring of her own volition, and not that of another."

The court charged in the language of the request, and this adoption of the contestants' claim was the conclusion of the charge.

The proponents claimed that, "assuming the relationship between Alice C. Lockwood and Emily Lockwood and the testatrix was intimate and confidential to the degree claimed by the appellants, they are not thereby placed under such a ban of legal suspicion as to require them to take the burden of proving that they did not influence their mother, the testatrix, in the matter of making her will."

The court did not charge the jury in accordance with this claim, but did charge as follows : " There is also a presumption that a person of sound mind who executes a will with all the requisite formalities, does so without imposition or undue influence. This presumption of freedom from imposition or undue influence has no weight as evidence, and is not evidence. It simply casts ordinarily the burden of proving the effective exercise of undue influence or imposition by a preponderance of evidence upon those who oppose the probate of the will if it be found, as I said, that the testator had sufficient capacity to make a will. The burden, however, of proving the exercise of undue influence, which is upon the contestants, may be satisfied, shifted or discharged, whenever the business relation existing between a testatrix and the persons specially benefited by the will and having been shown to have had any part in procuring it to be drawn, is such as

denotes a special confidence, and gives to the party so benefited a controlling influence with the testatrix. In such cases the jury should be fully satisfied that the relation had no undue or improper influence over the mind of the testator, and did not induce a different disposition from what would have otherwise been made. If the evidence in this case discloses to you that the relation of Alice Lockwood to the testatrix was one of special confidence and trust, and that she has benefited by her acts in that relation, then it becomes and is incumbent upon those who propose the will for probate to show that she acted fairly and that she took no advantage of her position to induce or procure the making of the will or any part of it in her favor."

The nature of the relation of special confidence and trust above mentioned, and of the evidence from which its existence may be inferred, is stated to the jury by the court as follows : " There is evidence tending to show that Alice Lockwood, for a number of years, was entrusted with the possession of a key to a box in the vault of a New York safe deposit company, in which were kept securities belonging to Mrs. Lockwood, and so had access to those securities at all times ; that she cut the coupons and collected the money for Mrs. Lockwood ; that she was in the habit of receiving checks from Mrs. Lockwood payable to herself, and of collecting the money on them for Mrs. Lockwood ; that she assumed to control the testatrix as to endorsements of notes, and advised her in affairs generally, as in the instance of the agreement with Irving Lockwood as to the management of the farm. . . . On the other side, there is evidence tending to show that the confidence given Alice Lockwood in relation to securities in New York was such only as had been given for years to other members of the family ; that others also participated in the transaction of her business, and in handling her money ; that there was, in short, no special confidence given to Alice Lockwood."

In view of the state of evidence and claims of the parties

disclosed by the whole record, we think that the claim of the proponents, that the foregoing passages of the charge gave to the jury an erroneous and harmful statement of the law applicable to the facts in this case, is correct. This harmful effect is not avoided by other portions of the charge to which the contestants have directed our attention. It seems to us that the passages assigned as erroneous did in effect instruct the jury that the trust and confidence existing between the testatrix and her daughter Alice, as shown by the business relation between them testified to by the contestants' witnesses, in connection with the fact of Alice's presence in the probate office during the interviews between Judge Gregory and Mrs. Lockwood which preceded the execution of the will, and the provisions contained in the will specially beneficial to Alice, did in law (in the absence of further evidence) establish the fact that Alice actually so used such relation of confidence between herself and her mother as to overcome her mother's will and constrain her to make testamentary provisions contrary to her wishes, and which she would not have made if no compulsion had been used; and that thereupon it became, and was, incumbent upon the proponents of the will, and the burden was cast upon them, to disprove by a preponderance of evidence any effective exercise of undue influence, and that the jury should be fully satisfied that the relation between Alice and her mother had no undue or improper influence over the mind of her mother and did not induce a different disposition from what she would otherwise have made.

It is manifest that such an instruction would be erroneous. In this State the issues upon the trial of an appeal to the Superior Court from the decree of the Court of Probate admitting a will to probate, are fixed by statute,— they are the same as the issues before the Court of Probate. Was the paper propounded executed in conformity with statute requirements? Was the testator at the time of execution of the will eighteen years of age and of sound mind? General Statutes, §§ 292, 293.

The proponents of the will maintain the affirmative of these issues. They affirm two main propositions, namely: the will was duly executed; the testator had testamentary capacity. By force of a settled maxim in the administration of justice, they must establish by evidence the propositions they affirm, or fail in their cause. By reason of this rule, under our practice the proponents must go forward in the production of evidence. By reason of this rule, upon the close of the trial, they must establish by a fair preponderance of all the evidence a reasonable belief in the truth of the propositions they have affirmed. The burden of proof as to the propositions they have affirmed remains upon the proponents from the beginning to the end of the trial.

But a will properly executed by a person having testamentary capacity may, in analogy to a deed or contract, be rendered invalid by fraud or undue influence, which is a species of fraud. When upon the trial a will, shown to have been duly executed by a competent testator, is attacked as having been obtained by undue influence, a third main issue is presented, namely: was the testator induced by undue influence to make the will, or any provision thereof? The opponents of the will maintain the affirmative of this issue, and by force of the same maxim must establish by evidence the proposition they affirm. *Comstock* v. *Hadlyme Ecclesiastical Society*, 8 Conn. 254, 261; *St. Leger's Appeal*, 34 id. 434, 447; *Livingston's Appeal*, 63 id. 68, 73, 26 Atl. 470; *Baxter* v. *Camp*, 71 Conn. 245, 253, 41 Atl. 803; *Birdseye's Appeal*, 77 Conn. 623, 625, 60 Atl. 111. Any main issue which the party affirming it must establish by a preponderance of evidence may be supported or attacked by a variety of subordinate and evidential facts, and the rule of reason which underlies the maxim that he who affirms a proposition must establish it, applies to these evidential facts, so that the one relying upon an affirmative fact as essential to his side of the controversy must prove that fact. This is obvious, and ordinarily calls for no comment from the court. It is entirely consistent

with the controlling maxim that when all the evidence affecting every subordinate and evidential fact has been received, the obligation rests upon him who affirms the main proposition to satisfy the jury by a clear preponderance of the whole evidence that his proposition is true, and if he fails to do this he fails in his contention.

We have recognized one exception to the operation of this maxim in trials upon the probate of a will involving the affirmation of undue influence. In certain cases— where the natural object of the testator's bounty is excluded from participation in his estate, where a stranger supplants children, and the will is in favor of the lawyer drawing and advising as to its provisions, or the guardian having charge of his person and estate, or of the person occupying a clearly analogous position of trust—there is imposed upon the proponents of the will, upon the trial of the issue as thus raised, the obligation of disproving by a clear preponderance of evidence the affirmation of the actual exercise of undue influence by such beneficiaries of the will. *St. Leger's Appeal,* 34 Conn. 434, 450 ; *Dale's Appeal,* 57 id. 127, 143, 17 Atl. 757. This exception should not be extended beyond the limitations placed upon it in its recognition. Its justification is to be found in a rule of policy which seeks to prevent the unseemly sight of a stranger occupying such a delicate fiduciary relation, advising a testator to exclude his own family from participation in his estate for the benefit of the adviser. The exception, in practical effect, changes a permissible inference of fact into a necessary presumption of fact. Undue influence, in the nature of things, can rarely be proved by direct evidence. It may, and ordinarily must, be established by direct proof of a variety of facts, from which the trier may, in the exercise of his reason, infer the existence of other facts. A fact which naturally and commonly implies the existence of another fact is said to raise a presumption that the latter fact exists, and the probative force of such presumption, very slight or very strong, according to the circumstances of each case, may

call for rebutting evidence of greater weight. *Baxter* v. *Camp*, 71 Conn. 245, 253, 41 Atl. 803. Thus, there is a presumption that a testator wishes his children to participate in his estate, and when by his will he excludes his children from that participation and diverts his estate to a stranger whose business relations to him denote a special confidence and controlling influence, there is a presumption, strong or weak, according to all the circumstances, that this influence was in fact exerted to constrain the testator to make a will against his wishes. The exception above mentioned changes such presumption from one that possibly, as a matter of reasoning, might show undue influence, to one that certainly, as a matter of law, is prima facie proof of undue influence.

As we have said, it seems to us that the charge in effect instructed the jury that the relation of confidence existing between Alice and her mother raised a presumption which, unless overcome by rebutting evidence, established the fact of undue influence, and that the proponents were bound to fully satisfy the jury by a preponderance of all the evidence that no undue influence was in fact exercised. It is quite possible, and even probable, that the trial judge did not intend such effect; but even if a careful analysis of the whole charge might give support to a different interpretation, the presentation of the question of burden of proof, as made in the charge, in view of the state of evidence, must have been misleading, and injuriously so, especially in view of the entire failure to give the jury to understand that the business relation claimed to exist between Alice and her mother did not of itself raise a presumption of undue influence. There is a broad distinction between the effect of a confidential relation of a legatee to the testator, as suggestive of undue influence, when that legatee is a stranger and when he is a child. In the latter case, both the relation of confidence and some participation in the estate is natural. In *Dale's Appeal*, 57 Conn. 127, 144, 17 Atl. 757, we say: " It is the duty of a son to entitle himself to the confidence of his parents ; it is his right to

ask with earnestness, restrained within proper limits, for testamentary remembrance ; it is the privilege of the parents to make it, having capacity to know what is done. In this instance it is true the mother and son dwelt together as one family ; of course all opportunities were open to him, but yet, as a matter of law, the burden remained with the appellant. It was for him to prove that the son abused the confidence of the mother ; or that his superior mind so dominated her own, as that, unable to resist, she surrendered her judgment and will to him. This the appellant was not required to do by direct evidence ; he was permitted to do it wholly upon inference ; upon inferences drawn from the opportunities merely for coercion by threats or inducements by flattery." The language used in that case is applicable to the facts appearing in this case. The attention of the court having been directed by the proponents to their claim on this point, its failure to impress upon the jury in any effective way the distinction between the possible probative effect of a relation of trust and confidence existing between the testatrix and a stranger, and the same relation between the testatrix and her daughter, a member of her household, is, under the circumstances of this case, harmful error.

The rulings upon evidence to which exception was taken do not furnish sufficient ground for a new trial.

As to the assignment of error in the denial by the court of the motion for a new trial on the ground of a verdict against evidence, we deem it unnecessary to pass directly upon the question. A new trial must be ordered on account of the error in the charge, and it is therefore immaterial whether or not the court also erred in denying the motion for a new trial on the ground of verdict against the evidence. Indeed, the question is hardly before us, as it would be if palpable misconduct of the jury were the only question presented. In such case we must assume that they were properly instructed as to every material point. Here error in the charge of the court, as well as error in the court's ruling as to legal misconduct in the

jury, is claimed. Having found error in the charge, that error should be treated as the controlling one.

There is error in the judgment of the Superior Court and the cause is remanded for further proceedings according to law.

In this opinion the other judges concurred.