JENNETTE P. TRELLA *v.* WALTER PRESTOFF ET AL.,
EXECUTORS (ESTATE OF EVA PRESTOFF).

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, JS.

Argued October 14—decided November 7, 1941.

*Stanley Plocharczyk,* for the appellants (defend-
ants).

*Edward W. Broder,* for the appellee (plaintiff).

BROWN, J. Eva Prestoff of Suffield died on October
12, 1939, leaving an instrument dated October 9, 1939,
which was admitted to probate as her last will on

October 23, 1939. From this order and decree the plaintiff appealed to the Superior Court alleging lack of testamentary capacity and undue influence. The court found for the plaintiff on both grounds, and sustained the appeal. The defendants appeal from the judgment, assigning error in the court's refusal to find certain facts and in its conclusion upon the above grounds that the instrument was not the last will of Eva Prestoff. The finding is corrected by adding the single material fact to which the defendants are entitled, that the instrument named them as the sole beneficiaries. If the court was warranted in concluding, upon the finding so corrected, either that the defendants had failed to prove testamentary capacity, or that the plaintiff had proved undue influence, the judgment must stand. In the view which we take of the case, therefore, our discussion is confined to the issue of testamentary capacity. It is the condition of mind and memory of the deceased at the very time when she executed the instrument which is determinative of this question. *Jackson* v. *Waller*, 126 Conn. 294, 301, 10 Atl. (2d) 763. And the burden of proving that she had testamentary capacity rested upon the defendants. *Lockwood* v. *Lockwood*, 80 Conn. 513, 521, 69 Atl. 8.

The following is a summary of the more significant facts in the finding. By the instrument in question Eva Prestoff, the deceased, whose only surviving children were the plaintiff and the defendants, left all of her estate to the latter. Prior to the death in 1923 of John Prestoff, the father of these children, he and his wife Eva owned and operated a tobacco farm where the family made its home, and the children in addition to the work which they did on the farm, paid to their parents for the benefit of the family what they earned at other occupations. After John's death

the same arrangement was carried on by Eva and the children, including a son who died before she did, until the plaintiff married in 1926. In 1925 John's estate was distributed to Eva and their surviving children. When the plaintiff married she left the farm to maintain a home of her own and thereafter received no financial aid from her mother, who until her death continued to live on the farm together with the defendants. Throughout this period the plaintiff was on cordial terms with her mother and visited her often. The defendants, who were addicted to heavy drinking, were frequently unemployed, at which times they were supported by their mother. On February 17, 1934, at the request of her mother and in reliance upon her promise to leave her estate upon her decease in equal shares to her surviving children, the plaintiff joined with her brothers in releasing to Eva their interests in John's estate.

In February, 1939, Eva, who was then sixty-seven years old, became broken in health as a result of Bright's disease from which she continued to suffer until her death. In March and April she was in very poor mental and physical condition. From October 1st to 6th she was wholly incompetent mentally, and incapable of making a will. On October 8th she was in a very weak, unsettled and serious condition. During the forenoon of October 9th she talked in uncertain terms about her property and stated that she was unable to decide what to do with it. At half-past two that afternoon attorney Stempien, who had been originally engaged by the defendants for the purpose, came, prepared the instrument in question, and read it to Eva in Polish. At 4 o'clock, with the attorney holding and directing her hand, three marks were made upon it which Dr. Upson, Louis Iskra and another witnessed. Eva's sister, Constance Sobinski,

came to see her at noon that day, refused to be a witness to the will because her husband William was not present, as Eva had insisted she would do nothing about it in his absence, and remained with Eva until about 6 o'clock. During the time Eva was in very poor condition and did not realize what was going on. On October 10th she was unable to recognize the people about her and was taken to the hospital where she remained unconscious until she died early in the morning of October 12th, of uremia, chronic miocarditis, chronic interstitial nephritis and arteriosclerosis, all of which had affected her mental condition.

The evidence, which we. have been called upon to examine in connection with claimed corrections of the finding, affords confirmation of the conclusion of the trial court that Eva lacked testamentary capacity. The trial court might have found that it would be an unnatural disposition of her property for her to cut off the plaintiff entirely although she was her only daughter, was on cordial terms with her and had been promised an equal share of her estate in return for the release given of the interest in her father's estate. See *Crandall's Appeal*, 63 Conn. 365, 367, 28 Atl. 531. Considering this fact in connection with the mental condition of the deceased before, after and during the afternoon when the will was executed, we cannot hold unwarranted the trial court's conclusion that the defendants had failed to prove that Eva had the requisite testamentary capacity at the time she executed the instrument.

There is no error.

In this opinion the other judges concurred.