LOIS W. CLARK ET AL. *v.* CARL O. DUNBAR, JR.,
EXECUTOR (ESTATE OF EMMA C. NOLTING) ET AL.

SUPERIOR COURT          LITCHFIELD COUNTY          FILE NO. 13543

Memorandum filed November 9, 1953.

*William J. Larkin* and *Walter M. Pickett, Jr.,* both
of Waterbury, for the Plaintiffs.

*Michael V. Blansfield* and *Irving W. Pasternak,*
both of Waterbury, for the Defendants.

PHILLIPS, J.  This is an appeal from an order of the
Probate Court for the district of Woodbury admit-
ting to probate an instrument purporting to be the
last will of Miss Emma C. Nolting.  The appeal was

taken by three of the testatrix' four nieces and heirs at law, hereinafter referred to as the plaintiffs, all nonresidents. The reasons of appeal alleged lack of testamentary capacity and undue influence exercised over the testatrix by Amelia Hirsch, hereinafter referred to as the defendant.

The will was executed at the home of Mr. and Mrs. Hirsch on April 12, 1952, at some time in the late part of the afternoon. According to the testimony of Judge Dunbar, a member of the bar and a former judge of probate, who drew the will and officiated at its execution, the will was prepared by him the morning of April 12 after a conference with the testatrix. The drawing and execution of the will took place within approximately twenty-four hours after the testatrix had left the home of Mrs. Steele, where she had lived since October 10, 1951, and had been brought by the Hirschs to their home. She was ill and lying in bed the morning of April 12 when she gave Judge Dunbar directions for drawing the will, and in the afternoon when she executed it.

The fourth paragraph of the will stated that the testatrix made no provision for her niece Lois Wood Clark as she had already given her $5000 and articles of furniture during her lifetime. In the fifth paragraph she bequeathed all her stocks and bonds, valued at $2436 in the inventory, to Amelia Hirsch. In the sixth paragraph she gave one-eighth of the residue to her niece Frieda N. Carlsson, one-eighth to her niece Ruth N. Niles, one-eighth to her niece Abbie N. Holden, and five-eighths to Amelia Hirsch. In the seventh paragraph Judge Dunbar was appointed executor, and in the eighth the usual provision was made for the payment of taxes. Outside of the stocks, the estate consisted mainly of $10,886 in cash.

The burden of proving testamentary capacity rested on the proponents of the will. *Trella* v. *Prestoff,* 128 Conn. 337, 338. This burden was amply sustained.

While the testatrix was a sick old lady at the time of the execution, there is no room for doubt that she was mentally alert, well oriented, of sound mind, and knew exactly what she was doing. I have carefully considered all the evidence, including the medical testimony, concerning the testatrix' conduct and condition prior and subsequent to the time the will was executed and at the time of execution. Particularly convincing was the testimony of Judge Dunbar and of Dr. Cushman, one of the witnesses. I conclude that she had testamentary capacity within the test laid down by our courts. *Atchison* v. *Lewis,* 131 Conn. 218, 219.

The question of undue influence raises a more serious problem.

The general rule is that those who attack a will as the product of undue influence must assume the burden of proving the charge. *Page* v. *Phelps,* 108 Conn. 572, 581. There is a well-recognized exception to this rule where the natural objects of the testator's bounty are excluded in favor of one whose relationship to the testator was that of special confidence and controlling influence, such as a lawyer who drew the will, a guardian, a physician or a religious counselor. Ibid. The present case was not within this exception. Mrs. Hirsch did not occupy such a relationship, nor were the natural objects of the testatrix' bounty wholly excluded from her estate. The burden of proving undue influence rested upon the plaintiffs.

This case was bitterly contested over a period of two weeks by skillful and experienced counsel. It is hard to imagine any fact bearing upon this issue which was not brought out and made the most of by counsel for the plaintiffs. Yet from a careful perusal of all the evidence, I am unable to find any facts proven, or to draw any inferences, which would reasonably and logically lead me to the conclusion of the existence of undue influence. Such a conclusion, if

drawn, would rest wholly on surmise or suspicion, and this is not sufficient. *Bates* v. *Wheeler,* 109 Conn. 733, 734.

It is true that the will was drawn and executed in the defendant's home only twenty-four hours after the testatrix was brought there by her and that she was then old and sick and in bed. I have also given due weight to the fact that the defendant failed to testify, though she was present in court during the first week of the trial. The remaining testimony of the plaintiffs consisted for the most part of statements made by the testatrix prior to the making of the will, to the effect that Mrs. Hirsch was after her money, that she could not trust Mrs. Hirsch and was afraid of her and the like. A great deal of this testimony came from Mrs. Steele, who, I concluded, was strongly prejudiced against the defendant for personal reasons. There was also the diary of the testatrix, with relevant entries from July 2, 1951 to January 12, 1952, and five letters from the testatrix to her nieces. The diary is the most significant of the testatrix' declarations to show her attitude and relationship with Mrs. Hirsch.

From this diary there emerges the picture of a plucky but lonesome and forlorn old lady who had sold her home and was forced, at the age of eighty, to find another place to live. She finally secured living quarters at the home of Mrs. Steele in October, 1951, but she was not comfortable and did not feel secure there. In July, 1951, there came into her life a younger woman, the defendant, who showed her great attention, brought her small presents, invited her to her house frequently for meals and to see television, and did all manner of things which would engender a feeling of affection and dependency in an aged lady. Mrs. Hirsch endeavored to have the decedent come and live with her, but satisfactory arrangements were never made. Though there occa-

sionally appear in the diary symptoms of distrust of the motives of Mrs. Hirsch, these are only occasional, and the prevailing expression is one of affection and gratitude.

The entries in the diary concluded in January, 1952. However, the evidence of the testatrix' attitude towards the defendant at the time of the execution of the will and afterwards is not indicative of undue influence but rather the contrary. The testimony of Judge Dunbar was particularly significant. He stated that both at the time of preparing the will and of its execution he called the testatrix' attention to the substantial portion of her estate which she was leaving to a nonrelative. The testatrix each time replied in effect that Mrs. Hirsch had been very kind to her, that she was fond of Mrs. Hirsch and wanted her to have it. The testatrix was "positive" about what she wanted to do. As to her favorite niece, Lois Clark, the testatrix said, "I have given during my lifetime, and I do not wish to give again." The same attitude was displayed at the hospital, where she went from the Hirsch home on May 7, 1952, and where she died on May 20. She spoke of Mrs. Hirsch in terms of endearment and affection to both Judge Dunbar and an unbiased witness with whom she was sharing a room.

Assuming that Mrs. Hirsch had systematically sought to ingratiate herself with the testatrix over a long period of time, with the idea of eventually becoming the beneficiary of her will, and there is a basis in the evidence for believing that this may have been the case, and that under the influence of the feelings so generated the testatrix destroyed a former will and made the will in question, it does not follow as an inference that the will was the product of undue influence. If the will represented her wishes and was such a disposition of her estate as she desired, and she was then of sound and disposing mind, it was her

will and not another's. I find this to have been the case. She did not do something against her will and contrary to her wishes. Her discretion and judgment were not controlled and her free agency was not overcome. See *Hills* v. *Hart,* 88 Conn. 394, 401.

I conclude, upon all the evidence, that the plaintiffs have failed to prove undue influence.

The appeal is dismissed and the decree of the Probate Court affirmed.