******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## STACY HOLLOWAY *v.* LINDA CARVALHO ET AL.
### (AC 43831)

Elgo, Moll and Sheldon, Js.

*Syllabus*

The plaintiff appealed to the trial court from the decree of the Probate Court admitting the decedent's will to probate. The decedent, the plaintiff's grandfather, had two children, L and the defendant. The decedent's wife had died. L died in 2010 and expressly disinherited the plaintiff, her daughter. After the death of L, the decedent and the defendant met with an attorney, B, to discuss what would happen to the decedent's estate if the defendant also predeceased him. B advised the decedent that the plaintiff, as the only child of L, would inherit one half of the decedent's assets upon his death. He responded that he did not want the plaintiff to inherit any of his assets. B then drafted a new will for the decedent that reflected his express wish to disinherit the plaintiff. The will left all of the decedent's assets to the defendant and stated that the decedent intentionally made no provision for the plaintiff. After the decedent's death, the Probate Court admitted the decedent's will. Thereafter, the plaintiff appealed to the trial court, claiming, inter alia, that the will should not have been admitted to probate because the decedent was not of sound mind and was under the defendant's improper and undue influence. Following a trial, the trial court concluded that the Probate Court properly admitted the will to probate because the decedent had testamentary capacity to execute the will and was not under the undue influence of the defendant. On the plaintiff's appeal to this court, *held*:

1. The plaintiff could not prevail on her claim that the trial court improperly concluded that the decedent had testamentary capacity to execute the will; the defendant presented more than sufficient evidence that the decedent was of sound mind when he executed the will, and the court based its ruling on its well supported findings that, at the time the decedent executed the will, he was able to live independently with the assistance of family members, lacked serious brain injury that would deprive him of the ability to understand what he was doing when he executed the will, and he was well aware of what he was doing when he executed the will and had rational reasons for doing so, which was to change his previous will in order to disinherit the plaintiff because he wanted to ensure that she would not waste the assets she would otherwise inherit from him.

2. The trial court properly rejected the plaintiff's claim of undue influence: the burden of proof on the issue of undue influence generally rests with the person alleging it and, although it can be shifted in rare circumstances, the burden of disproving undue influence will not shift to a child of the testator, even where a confidential relationship appears to exist; moreover, the court's conclusion that there was no undue influence would not have changed even if the court had shifted the burden onto the defendant because the court's decision that there had been no undue influence was made under the clear and convincing standard, which is the same standard of proof that would have applied had the burden of proof formally been shifted to the defendant.

Argued March 16—officially released August 3, 2021

*Procedural History*

Appeal from the decree of the Probate Court for the district of Newington admitting to probate the will of Paul Pizzo, brought to the Superior Court in the judicial district of New Britain and tried to the court, *Aurigemma, J.*; judgment affirming the Probate Court's decree, from which the plaintiff appealed to this court. *Affirmed.*

*Joseph A. Hourihan*, with whom was *William S. Sha-*

*piro,* for the appellant (plaintiff).

*Linda L. Morkan,* with whom was *Christopher J. Hug,* for the appellees (defendants).

*Opinion*

SHELDON, J. The plaintiff, Stacy Holloway, appeals from the judgment of the trial court, *Aurigemma, J.*, affirming the admission to probate of the will of her late grandfather, the decedent Paul Pizzo. The will was submitted to the Probate Court by the plaintiff's aunt, the defendant Linda Carvalho, who was the decedent's only surviving daughter, the executrix of his estate, and the principal beneficiary under the will.[1] On appeal, the plaintiff claims that the court erred in affirming the admission of the decedent's will to probate after improperly rejecting her claims (1) that the decedent lacked testamentary capacity to execute the will, and (2) that the defendant exerted undue influence on the decedent in connection with the will. We affirm the judgment of the trial court.

The following facts and procedural history, as found by the court and supported by the record, are relevant to this appeal. The decedent, who was born on November 21, 1916, was married to his wife, Lee Pizzo, until her death on February 4, 1994. Lee and the decedent had two children, Linda Carvalho, the defendant, and her older sister Lisa Holloway. Linda and her husband, John Carvalho, have two adult children, John Paul[2] and Michelle. Lisa, who died on June 18, 2010, had one child, the plaintiff. In her will, Lisa expressly disinherited the plaintiff, stating only: "I intentionally make no provision in this Will for my daughter . . . for reasons which are good and controlling to me."

At the time of Lisa's death, the decedent's operative will was the last will and testament that he had executed on February 4, 1987 (1987 will). In his 1987 will, the decedent had directed that, upon his death, all of his assets would be distributed to his wife, but if she did not survive him, then they would be divided evenly between his children.

Following Lisa's death, however, the decedent met with an attorney, Michael Bellobuono, to review the terms of his 1987 will after the defendant, who then held his power of attorney and served as his primary caretaker and financial advisor, raised concerns about what would happen to him and his estate if she too should predecease him.[3] The defendant drove the decedent to his initial meeting with Bellobuono and personally attended that meeting. During the meeting, Bellobuono advised the decedent that under his 1987 will, the plaintiff, as Lisa's only child, would inherit one half of his assets upon his death.[4] The decedent responded immediately to that advisement by telling Bellobuono that he did not want the plaintiff to inherit any of his assets. Bellobuono thereafter drafted a new will for the decedent to reflect his express wish to disinherit the plaintiff.

On December 14, 2010, the decedent had a second

meeting with Bellobuono to review and execute the new will that Bellobuono had drafted for him. The defendant also drove the decedent to Bellobuono's office for this second meeting but did not attend or take part in the meeting. Instead, she remained in the lobby while the decedent met with Bellobuono to review and execute the new will (2010 will).[5]

The 2010 will provided that, upon the decedent's death, all of his assets would be distributed to the defendant "if she is then living," but if she did not survive him, they would be distributed to the defendant's living issue. The decedent explained in the will that he had "intentionally made no provision [in it] for the benefit of [his] granddaughter, Stacy Holloway, not because of lack of love or affection [for her] but because she [had] been adequately taken care of during her lifetime." The will further provided that the defendant would serve as executrix of the decedent's estate, but if she did not survive him, that her daughter Michelle would serve in that capacity. The decedent died of natural causes on September 5, 2017, at the age of 100.

The Newington Probate Court, *Randich, J.*, admitted the decedent's 2010 will to probate by a decree dated July 10, 2018. The plaintiff filed a de novo appeal in the Superior Court on July 30, 2018, contesting the admission of the 2010 will to probate. In her amended complaint dated August 16, 2018, the plaintiff alleged that the 2010 will should not have been admitted to probate because, when the decedent executed it, (1) he was not of sound mind, (2) he was suffering from an insane delusion, and (3) he was under the defendant's improper and undue influence. The defendant denied each of the plaintiff's allegations, both in her individual capacity and in her capacity as executrix of the decedent's estate, in her answer dated August 27, 2018.

Thereafter, on September 20, 2019, the parties submitted an amended stipulation of facts to the court in anticipation of trial. The facts to which the parties stipulated included: (1) that the will complied with the formality requirements of due execution set forth in General Statutes § 45a-251, in that it was in writing, it had been signed by the decedent, and it was attested to by two witnesses, each of whom had signed it in the decedent's presence; (2) that the decedent was over eighteen years of age when he executed the will; and (3) for clarity, that the parties disputed whether, when the decedent executed the will in December, 2010, he was of sound mind or suffering from an insane delusion, and whether he was then acting under the undue influence of the defendant.

Trial took place on two days, October 17, 2019, and November 1, 2019. On the first day of trial, the court heard testimony from the plaintiff, the defendant, the defendant's son, John Paul, and Janice Olivieri, an internist who had treated the decedent for several years

prior to his death. On the second day of trial, the court heard testimony from Kenneth Selig, a forensic psychiatrist whom the defendant had called as an expert witness.

Olivieri testified that she had treated the decedent from 2007 or 2008 through 2014.[6] She stated that the decedent had been diagnosed with dementia by another physician before he became her patient, and recalled that while he was under her care, she had observed that he had poor recall and at times did not know where he was. She further testified, based upon the decedent's medical records from 2008, that he had had "multiple infarcts" in the frontal lobe of his brain, which had left him with scar tissue that, in her opinion, would have caused him to have difficulty understanding a complicated legal document such as a will. On those bases, Olivieri concluded that the decedent lacked testamentary capacity to execute the challenged will on December 14, 2010.

Selig testified on the second day of trial that he had prepared for his testimony, inter alia, by reviewing the decedent's treatment records from Hartford Hospital for the period from January 24, 2008, through September 2, 2017, and from Hartford Healthcare for the period from March 27, 2012, through June 28, 2017. He further stated that, to help him determine whether the decedent had testamentary capacity to execute the 2010 will, he had reviewed a scientific paper on the stages of dementia, he had spoken to the defendant, and he had reviewed transcripts of the deposition testimony of each of the other trial witnesses. On the basis of what he had learned in this process, Selig concluded that the decedent was capable of executing a will on December 14, 2010, because most of the decedent's medical records indicated that he then was oriented to time, person, and place, and the overwhelming evidence established that the confused condition and slurred speech documented in his medical records from 2008, on which Olivieri had relied in her testimony, had resolved by December, 2010. Selig explained that he found support for his conclusions both in the decedent's pathology, as documented in the decedent's medical records, and in the decedent's day-to-day functioning in the relevant time frame, as observed by both parties and described in their testimony. Selig opined that the frontal lobe of the decedent's brain was not severely damaged because, as documented in reports of a 2008 CT scan and a 2016 MRI of the decedent's brain, he had had no more than two infarcts in that area. Selig asserted that, because there was not much damage to the decedent's frontal lobe, how he functioned on a daily basis at the time he executed the 2010 will weighed more heavily in assessing his testamentary capacity than any brain damage he previously had suffered. Selig thus concluded, in his professional opinion, that the decedent had testamentary capacity to execute the chal-

lenged will on December 14, 2010, because he lived alone on that date, he was frequently left alone by his caretakers in that time frame, and he remembered to take the medications that were apportioned for him by members of his family.

After the close of evidence at trial and posttrial briefing by the parties, the court affirmed the decision of the Probate Court to admit the will to probate after rejecting the plaintiff's claims that the decedent lacked testamentary capacity to execute the will and that he was under the undue influence of the defendant at the time of the will's execution. As to the plaintiff's claim of lack of testamentary capacity, the court found first, that the plaintiff had failed to produce sufficient evidence that the decedent lacked testamentary capacity—which it defined as "mind and memory sound enough to know and understand the business upon which [he] was engaged, that of the execution of a will, at the very time [he] executed it"—to overcome the decedent's "presumption of sanity" at that time, and thus the defendant could rely upon that unrebutted presumption to meet her statutory burden of proving that the decedent was "of sound mind" when he executed the 2010 will, and, second, that apart from the presumption of sanity, the combined evidence presented by the parties proved by clear and convincing evidence that the decedent had testamentary capacity when he executed the 2010 will. In support of these findings, the court relied specifically on the plaintiff's and the defendant's testimony that, in December, 2010, the decedent was living on his own, that he then knew all the members of his family, took all the medications that his family members set out for him and competently engaged in grocery shopping with their assistance, and that in that time frame he frequented a gym, enjoyed socializing with others, and loved watching television, particularly "Judge Judy." As for the medical testimony concerning the decedent's testamentary capacity, the court expressly discounted Olivieri's opinion that the decedent lacked such capacity because he could not understand complicated legal documents, holding that a testator need not have the ability to understand complicated legal documents in order to have testamentary capacity to execute a valid will. Furthermore, it refused to credit Olivieri's purported recollection of the decedent's poor memory and occasional unawareness of his whereabouts when he was her patient because her own records of the decedent's care and treatment contradicted that testimony. Specifically, the court noted that Olivieri's records of the decedent's visits with her on several dates following the execution of the 2010 will indicated that he was doing remarkably well and was appropriately answering all of the questions that she put to him. In the end, the court agreed with Selig that the decedent was "capable of executing a will on December 14, 2010."

As for the plaintiff's claim of undue influence, she

had asserted that, because the defendant was the person who held the decedent's power of attorney and served as his primary caregiver and financial manager when he executed the 2010 will and made her his primary beneficiary thereunder, she was in a position of trust and confidence vis-à-vis the decedent that imposed fiduciary duties to him upon her, and thus required her to prove by clear and convincing evidence that she had not taken advantage of their special relationship by exerting undue influence on him in connection with the 2010 will. The defendant disagreed, arguing that the burden was on the plaintiff, as the party contesting the will on the ground of undue influence, to prove by clear and convincing evidence that she had subjected the decedent to such undue influence.

The defendant based her argument on our Supreme Court's decision in *Lockwood* v. *Lockwood*, 80 Conn. 513, 69 A. 8 (1908), in which the court recognized that the burden of proof on a claim of undue influence does not shift to a party claiming an inheritance under a challenged will except in "one exception" in which the person believed to have exercised the undue influence was in a fiduciary relationship with the testator, the will favors the fiduciary, and the fiduciary is a stranger resulting in the complete elimination of the natural objects of the testator's bounty. See id., 522. In this case, claimed the defendant, she neither stood in such a relationship of trust and confidence vis-à-vis the decedent as to impose fiduciary duties upon her with respect to his will nor was she a stranger to him, for she was his daughter.

The court, citing *Lockwood*,[7] affirmed the decree of the Probate Court after finding by clear and convincing evidence that the defendant had not exerted any undue influence on the decedent in connection with the 2010 will. In support of that ruling, the court found that the evidence did not support a finding that the decedent's free agency and independence had been so overcome by the defendant's influence on him that the will was not a product of his own planning and desires. To the contrary, it found by clear and convincing evidence that the decedent had executed the new will in precise accordance with his own spontaneously expressed wish that his assets not be wasted after his death by leaving them to a granddaughter who had problems managing her money. The court thus found that the decedent not only knew what he was doing when he met with Bellobuono, which was to sign and execute a new will to disinherit the plaintiff, but he had a rational reason for so doing, which was to ensure that his assets would not be wasted by the plaintiff after his death. The court found that the latter conclusion was further supported by its consistency with the earlier decision of the plaintiff's mother to disinherit the plaintiff in her own will as well.

As a result of its finding that the decedent had not been under undue influence from the defendant when he executed the 2010 will, and of the high standard of proof by which it made that finding, the court further concluded that it did not need to formally determine which party bore the ultimate burden of proving or disproving undue influence in this case. The evidence establishing the absence of undue influence was sufficiently strong, the court concluded, that it would satisfy even the most demanding standard of proof under which either party could have been required to bear the burden of proving or disproving it.

Notwithstanding the latter conclusion, the court went on to address the plaintiff's claim that the burden of disproving undue influence should have been formally assigned to the defendant because she allegedly owed fiduciary duties to the decedent. The court rejected that claim, finding that the defendant did not stand in so close a relationship of trust and confidence with the decedent as to make her his fiduciary. In so ruling, the court applied the rule articulated in *Dunham* v. *Dunham*, 204 Conn. 303, 322, 528 A.2d 1123 (1987), in which our Supreme Court declared that "[a] fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other." This appeal followed. Additional facts will be set forth as necessary.

I

We first examine the plaintiff's claim that the court erred in affirming the admission of the decedent's 2010 will to probate over her objection that the defendant had failed to establish that the decedent had testamentary capacity at the time he executed the will.[8] The court ruled that the defendant had presented sufficient evidence of the decedent's testamentary capacity when he executed the will to raise a presumption of his sanity at that time, and, thus, without sufficient countervailing evidence from the plaintiff to overcome that presumption, the defendant met her statutory burden of proving that he was of sound mind at the time of execution, as required by General Statutes § 45a-250.[9] The plaintiff claims error in the court's ruling on the ground that the defendant presented no evidence that, at the time the decedent executed the 2010 will, he had full and specific knowledge of the nature and condition of his property, as she claims to be required by law to execute a valid will directing the final disposition of such property after his death. The defendant disagrees with the plaintiff's contention, arguing that under well established Connecticut law, as cited and properly relied on by the trial court, what is required to establish a testator's testamentary capacity is that, at the time he executed the will, he had sufficient mind and memory to know

and understand the business in which he was engaged, to wit, executing a will. We agree with the defendant.

The plaintiff's first claim of error presents a question of law; see *Bassford* v. *Bassford*, Superior Court, judicial district of Middlesex, Docket No. CV-15-6012903-S (March 24, 2016) (reprinted at 180 Conn. App. 335, 340, 183 A.3d 680), aff'd, 180 Conn. App. 331, 183 A.3d 680 (2018); as to which our standard of review is plenary. See *Barber* v. *Barber*, 193 Conn. App. 190, 221, 219 A.3d 378 (2019). Simply put, the question is whether proof of a testator's testamentary capacity to execute a valid will invariably requires proof that at the time of execution the testator had full and specific knowledge of the nature and condition of his property.

In support of her argument in the affirmative, the plaintiff relies on language in a jury instruction approved by our Supreme Court in *In re Probate Appeal of Turner*, 72 Conn. 305, 313, 44 A. 310 (1899) (*Turner*), which she claims establishes that an essential element of testamentary capacity is that the testator had full and specific knowledge of all of his assets at the time he executed the will. The instruction at issue in *Turner* provided that to establish testamentary capacity, "it was sufficient if the testatrix had such a mind and memory as would enable her to recollect and understand 'the nature and condition of her property, the persons who were or should be the natural objects of her bounty, and her relations to them, the manner in which she wished to distribute it among or withhold it from them, and the scope and bearing of the provisions of the will she was making.' " Id. The plaintiff contends that the first clause of this instruction—specifically, that "it was sufficient if the testatrix had such a mind and memory as would enable her to recollect and understand 'the nature and condition of her property' "; id.; expressly established an element of proof that was not satisfied in this case.

The defendant disagrees for two reasons, which we find persuasive. First, she rightly contends that the language of the instruction approved in *Turner* cannot be read to require proof that when the testator executed the will, he had full and specific knowledge of the nature and condition of his property. Instead, the instruction focused on the general condition of the testator's mind and memory at the time he executed the will, more broadly requiring a finding that he then had the memory and mental ability to recollect and understand the matters listed in the instruction, all of which would logically be considered and taken into account by a rational person who knows that he was executing a will, and thereby directing the final disposition of his property after his death.

We also note that the plaintiff's interpretation of *Turner* is at odds with the prior decision of our Supreme Court, which rejected just such a claim as to the proof

required to establish testamentary capacity. In *St. Leger's Appeal from Probate*, 34 Conn. 434, 438 (1867) (*St. Leger*) (preliminary statement of facts and procedural history), the court reviewed a will contestant's claim that the trial court had erred by failing to give a requested jury instruction requiring that the testator be proved to have "comprehend[ed] *perfectly* the condition of his property" in order to establish his testamentary capacity. (Emphasis added.) Addressing that argument, the court in *St. Leger* ruled that a testator must be found to have had "sufficient capacity to make a will if he understood the business in which he was engaged, and the elements of it, namely, if he *recollected* and understood, or in other words *comprehended*, the nature and condition of his property . . . ." (Emphasis added.) Id., 448–49. Proof of testamentary capacity thus requires proof of the testator's understanding of what he was doing when he executed the will and the elements of it, but it does not require proof that he then had precise comprehension of the nature and condition of each and every element of his property. See id., 449.

Second, the defendant looks to case law from the last century interpreting and applying the statute under which her burden of proving testamentary capacity arises, and rightly notes that there is no language in any such case that conditions a finding of testamentary capacity on proof that the testator had full and specific knowledge of the nature and extent of his property when he executed the will. To the contrary, such case law uniformly establishes, as the trial court ruled, that "§ 45a–250 provides: 'Any person eighteen years of age or older, and of sound mind, may dispose of his estate by will.' The burden of proof in disputes over testamentary capacity is on the party claiming under the will. . . .

"To make a valid will, the testatrix must have had mind and memory sound enough to know and understand the business upon which she was engaged, that of the execution of the will, at the very time she executed it. . . .

"Our law provides that it is a testator's capacity at the time of the will's execution that is relevant. The fundamental test of the testatrix's capacity to make a will is her condition of mind and memory at the very time when she executed the instrument. . . . While in determining the question as to the mental capacity of a testator evidence is received of his conduct and condition prior and subsequent to the point of time when it is executed, it is so admitted solely for such light as it may afford as to his capacity at that point of time and diminishes in weight as time lengthens in each direction from that point." (Citations omitted; internal quotation marks omitted.) *Bassford* v. *Bassford*, supra, Superior Court, Docket No. CV-15-6012903-S (reprinted at 180 Conn. App. 340–41); see also *Atchison* v. *Lewis*, 131 Conn. 218, 219–20, 38 A.2d 673 (1944) ("[t]he test of

testamentary capacity stated in its simplest terms is that the testator must have mind and memory sound enough to enable him to know and understand the business upon which he is engaged, that is, the execution of his will at the very time he executes it"); *Jackson* v. *Waller*, 126 Conn. 294, 301, 10 A.2d 763 (1940) (same); *Maroncelli* v. *Starkweather*, 104 Conn. 419, 424, 133 A. 209 (1926) (same); *Sturdevant's Appeal from Probate*, 71 Conn. 392, 399, 42 A. 70 (1899) (same). "While there is a presumption of sanity in the performance of legal acts, the party that presents a will still bears the burden of going forward with his proof, and only then does the burden shift to the opponents to prove incapacity." (Internal quotation marks omitted.) *Sanzo's Appeal from Probate*, 133 Conn. App. 42, 51, 35 A.3d 302 (2012).

On the basis of the foregoing analysis, we agree with the defendant that she was entitled to prevail on her claim that the decedent had testamentary capacity when he executed his 2010 will without specific proof that he then had full and specific knowledge of the property whose final disposition he was directing in the will. Even in the absence of such evidence, the defendant presented more than sufficient evidence not only to raise the presumption of the decedent's sanity, but also to satisfy her ultimate statutory burden of proving by a fair preponderance of the evidence that the decedent had such capacity in December, 2010. The court based its ruling on its well supported findings that the decedent was then able to live independently with the assistance of members of his family, that he lacked such serious brain injury as would deprive him of the ability to understand what he was doing when he executed the will, and, in fact, he was well aware of what he was doing when he executed the will and had rational reasons for so doing, which was to change his previous will and disinherit the plaintiff, in order to ensure that she would not waste the assets she otherwise would have inherited from him.[10]

Accordingly, we reject the plaintiff's first claim of error on appeal.

## II

The plaintiff next claims that the court erred in affirming the admission of the decedent's 2010 will to probate after improperly rejecting her claim that the defendant had exerted undue influence upon the decedent in connection with the will. The court erred in so ruling, she claims, by failing to assign the burden of disproving her claim of undue influence to the defendant. The defendant responds to that argument in two ways. First, she contends, under the authority of *Lockwood* v. *Lockwood*, supra, 80 Conn. 522, that the burden of proof as to undue influence properly rests on the party contesting the will unless the case involves the "one exception" described in *Lockwood*, under which such a burden shift is appropriate. On that score, the

defendant notes specifically that she and the decedent were members of the same family, between whom no suspicion of undue influence arises when one is favored in the other's will even when the one so favored occupied a position of trust and confidence vis-à-vis the one who favored her at the time he executed the will. Second, the defendant argues that, even if the court had improperly assigned the burden of disproving undue influence to her despite her familial relationship with the decedent, such a determination would not have made any difference in the court's resolution of that issue or its ultimate disposition of this case, because the court made its finding of no undue influence by clear and convincing evidence, which is the same standard under which that issue would have been decided had the burden of disproving it been formally assigned to her. Claiming that "the weight of the evidence introduced at trial [showed] that [the decedent] was in control both in the making of a new will, and in its contents and instructions," the defendant argues that the court's finding of no undue influence was not clearly erroneous and must, therefore, be upheld. For the following reasons, we agree with the defendant that the court's rejection of the plaintiff's claim of undue influence was proper and must be affirmed.

"Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses." (Internal quotation marks omitted.) *Champagne* v. *Champagne*, 54 Conn. App. 321, 324, 734 A.2d 1048 (1999). "Ordinarily, the burden of proof on the issue of undue influence rests on the one alleging it . . . . In will contests, we recognize an exception to this principle when it appears that a stranger, holding toward the testator a relationship of trust and confidence, is a principal beneficiary under the will and that the natural objects of the testator's bounty are excluded. . . . The burden of proof, in such a situation, is shifted, and there is imposed upon the beneficiary the obligation of disproving, by [clear and convincing evidence], the exertion of undue influence by him. . . . We have said, however, that the law does not brand every legacy as prima facie fraudulent simply because the legatee enjoys the trust and confidence of the testator. . . . [I]t is only where the beneficiary is, or has acquired the position of, a religious, professional or business adviser, or a position closely analogous thereto, that the rule of public policy can be invoked which requires such a beneficiary to show that he has not abused his fiduciary obligation. . . . It has been stated frequently that the rule should not be extended beyond the limitations placed upon it in its recognition. . . . There is a marked distinction between the situa-

tion where the beneficiary is a stranger and the situation where [s]he is a child of the testator or grantor. . . . When . . . a child is the beneficiary, the burden of proving the absence of undue influence does not shift to the child, even though it appears that a confidential relationship existed. . . . It is the child's privilege to anticipate some share of the parent's estate. He may use all fair and honest methods to secure his parent's confidence and obtain a share of his bounty. From such a relationship alone, the law will never presume confidence has been abused and undue influence exercised." (Citations omitted; internal quotation marks omitted.) *Berkowitz* v. *Berkowitz*, 147 Conn. 474, 476–78, 162 A.2d 709 (1960).

Under the foregoing authorities, the defendant is correct that the court did not err by not formally assigning to her the burden of disproving the plaintiff's claim of undue influence. Even if she had been found to occupy such a position of trust and confidence vis-à-vis the decedent when he executed the will as to make her his fiduciary, which the trial court expressly rejected, the burden of disproving that she exerted undue influence on the decedent could not have been assigned to her under the rule of *Lockwood* because she was his daughter.

Furthermore, even if the court had formally shifted the burden of proof to the defendant, that burden shift would have had no effect on the court's finding of no undue influence. Indeed, the court's decision that there had been no undue influence was made under the clear and convincing evidence standard, which is the same standard of proof that would have applied had the burden of proof formally shifted to the defendant. Accordingly, the court's alleged error did not contribute to its judgment against the plaintiff, and thus it affords the plaintiff no basis for reversing that judgment on appeal.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendants are Linda Carvalho, as executrix of the decedent's estate, and Linda Carvalho, individually, as the decedent's daughter and heir. We refer to Linda Carvalho as the defendant throughout this opinion without making a distinction between her individual or representative capacity, unless it is necessary to do so.

[2] We refer to the defendant's son as John Paul and refer to the defendant's husband as John Carvalho.

[3] The defendant was concerned because, although the decedent's 1987 will named the defendant as a successor executrix in the event of his wife's death, the 1987 will did not name an additional successor executor to serve in that capacity in the event that the defendant predeceased the decedent. The defendant set out to address her concern by having her daughter named as a successor executrix.

[4] The defendant was the only witness to testify about the substance of the meeting because Bellobuono was deceased at the time of trial.

[5] The plaintiff does not dispute that the 2010 will was duly executed under applicable Connecticut law.

[6] Olivieri was also the plaintiff's work colleague.

[7] We note that the court used the wrong case title in its decision, *In re Lockwood* instead of *Lockwood* v. *Lockwood*, but used the correct citation. We consider the court's error to be a harmless scrivener's error that does

not affect the correctness of its decision.

[8] In her brief on appeal, the plaintiff set forth her claims in a different order. For the sake of convenience, we discuss the plaintiff's claims in reverse order.

[9] General Statutes § 45a-250 provides: "Any person eighteen years of age or older, and of sound mind, may dispose of his estate by will."

[10] Despite the plaintiff's claim, there was evidence that the decedent had a general sense of what his property consisted of, because his concern was that the plaintiff would waste money because of her purported poor life choices, and his assets mainly consisted of cash assets.

———————————————