June DeCarlo et al. *v.* Catherine Kolnaski et al.
(5433)

Dupont, C. J., Stoughton and Foti, Js.

Argued November 5, 1987—decision released February 2, 1988

*Thomas G. Moukawsher,* with whom, on the brief, was *Joseph E. Moukawsher,* for the appellants (plaintiffs).

*Timothy D. Bates,* with whom, on the brief, was *Peter A. Anderson,* for the appellees (defendants).

FOTI, J. This is an appeal from a judgment rendered for the defendants after the striking of the plaintiffs' petition for a writ of mandamus brought by four electors and one city council member of the city of Groton. The plaintiffs claim the trial court erred (1) in using an incorrect standard for its decision on the motion to strike, and (2) in its interpretation of the charter of the city. We find the issues to be moot.

Most of the facts are not in dispute. On April 21, 1986, the clerk of the city of Groton received a petition signed by the plaintiffs and other electors of the town seeking to convene a special meeting of the electors for the purpose of acting on three resolutions pursuant to article IV, section I of the city charter.[1] The resolutions to be considered directed the mayor and city

---

[1] Article IV, section 1 provides in part: "A special city meeting shall be convened when the Mayor and Council deem it necessary. They shall convene such a meeting on a petition signed by 20 qualified electors and citizens within fifteen (15) days after receiving such petition."

council (1) to engage special counsel to institute legal action to challenge the constitutionality of Special Acts 1985, No. 34, which authorized conveyance from the State to a private developer of the Branford House, an historic mansion located in the city of Groton, (2) to expend the sum of $20,000 for that legal action, charging this expense to contingency or unencumbered funds, or, if no such funds were available, borrowing such sums in anticipation of next fiscal year taxes, and (3) to employ architectural engineering, recreational, historic preservation, and cultural consultants to study the acquisition of the Branford House by the city of Groton in accordance with its plan of development.[2]

Prior to the meeting scheduled to consider these proposals on May 15, 1986, a petition, signed by more than four electors was filed seeking a referendum on the resolutions, pursuant to Connecticut General Statutes § 7-7. The defendant city clerk of Groton refused to schedule such a referendum, and the plaintiffs thereupon brought this action of mandamus to compel the referendum. At the hearing to show cause why the writ should not be granted, the defendants moved to strike the complaint pursuant to Practice Book § 545 alleging it failed to state a cause of action for which relief could be granted, in that it was legally insufficient since the proposed resolutions clearly exceeded the power of the electorate under the charter of the city of Groton.

The plaintiffs challenge an act which no longer exists. Special Acts 1985, No. 34,[3] which is the basis of their

---

[2] This resolution stated further that the city of Groton's plan of development should provide: " 'The City Requests the State to grant it a first option to purchase the facility' with the goal of preservation of the Avery Point Branford House Waterfront Complex as a public[ly] owned and public[ly] maintained prime waterfront resource for the people without any commercial amusement device, motel, casino, cocktail lounge or arrangement for any privately owned contrivance, invention, project or scheme."

[3] Special Acts 1985, No. 34 provided: "AN ACT REQUIRING THE RESTORATION, PRESERVATION AND DEVELOPMENT OF THE BRANFORD HOUSE IN

petition for a writ of mandamus was repealed by Special Acts 1987, No. 29. Obviously, the plaintiffs cannot challenge the constitutionality of an act which no longer exists nor can they seek to expend money for that purpose, as sought by the first two resolutions. See *Breen* v. *Department of Liquor Control,* 5 Conn. App. 432, 499 A.2d 432 (1985).

The authority given to the board of trustees of the University of Connecticut to sell the state-owned Branford House to private developers was withdrawn, thereby extinguishing the threat of the public use of the property. Although the property may no longer be available for sale, the plaintiffs argue that the state may in the future declare it to be surplus property, pursuant to General Statutes § 3-14.[4] If that were to occur then the city of Groton would have an option to purchase that property under General Statutes § 3-14b.[5] The

GROTON. Notwithstanding the provisions of sections 4-26, 4-26a and 10a-140 of the general statutes or of any other general statutes, the board of trustees of The University of Connecticut may convey any or all of the buildings located on the Branford House site on the university's Avery Point campus and a groundlease of certain real property at the same location, to a developer. The state treasurer shall execute and deliver any deed necessary for a conveyance under this act and the board of trustees shall have the responsibility for all other incidents of such conveyances."

[4] General Statutes § 3-14 provides: "MANAGEMENT AND SALES OF STATE PROPERTY. The treasurer may appoint agents to manage all property to which the state becomes legally entitled and to sell any such property not necessary for the use of the state, at public or private sale, for cash or on credit, on such terms as the treasurer approves. The treasurer shall execute any conveyances thereof and shall render an account of his proceedings to the general assembly if in session or to the governor during the recess of the general assembly; but, if any owner of such property appears, he shall be entitled to it, or, if sold, to the avails thereof, after deducting the necessary expenses."

[5] General Statutes § 3-14b provides: "PRIOR TO SALE OF STATE-OWNED LAND, OPTION TO MUNICIPALITY OF LOCALE TO PURCHASE. Prior to the sale of any parcel of land, or a portion thereof owned by the state, except a transfer or conveyance to the party against whom foreclosure was taken or who conveyed to the state in lieu of foreclosure under the provisions

plaintiffs use this statute to claim that the third resolution is not moot. This is highly speculative and we are not persuaded by this argument as it refers to the third resolution.

We conclude that no practical relief may be granted to the plaintiffs because the property in this matter is not subject to Special Acts 1985, No. 34, the act about which the plaintiffs complain. See *Weinstein* v. *Bradford*, 423 U.S. 147, 149, 96 S. Ct. 347, 46 L. Ed. 2d 350 (1975). Jurisdiction over an appeal requires the

of section 17-304, the state treasurer shall first notify in writing the chief executive officer or officers of the municipality in which such land is situated of the state's intention to sell such land, and no agreement to sell land may be entered into or sale may be made by the state except as follows:

"(a) Within forty-five days after such notice has been so given, such chief executive officer or officers may give written notice to the state of the municipality's desire to purchase such land and shall have the right to purchase the interest in the land which the state has declared its intent to sell, subject to conditions of sale acceptable to the state.

"(b) If the chief executive officer or officers of the municipality fail to give notice, as provided in subsection (a) of this section, or give notice to the state of the municipality's desire to purchase such land, such municipality shall have waived its right to purchase the land in accordance with the terms of this section.

"(c) Within sixty days after notice has been given by the municipality of its desire to purchase such land, as provided in subsection (a) of this section, the state acting through the state treasurer shall sell such land to the municipality, provided the state and the municipality agree upon the conditions of sale and the amount to be paid therefor.

"(d) If the municipality fails to purchase such land within sixty days after notice has been given by the municipality of its desire to purchase the land, as provided in subsection (a) of this section, such municipality shall have waived rights to purchase the land in accordance with the terms of this section, subject to the provisions of subsection (e) of this section.

"(e) Notwithstanding the provisions of subsections (b) and (d) of this section, if the state thereafter proposes to sell such land to any person upon terms different than those offered to the municipality, the state shall first notify the municipality of such proposal, in the manner provided in subsection (a) of this section, and of the terms of such proposed sale, and such municipality shall have the option to purchase such land upon such terms and may thereupon, in the same manner and within the same time limitations as are provided in subsections (a) and (c), inclusive, of this section, proceed to purchase such land."

existence of an actual and present controversy. *Delevieleuse* v. *Manson,* 184 Conn. 434, 436, 439 A.2d 1055 (1981); *Connecticut Foundry Co.* v. *International Ladies Garment Workers Union,* 177 Conn. 17, 19, 411 A.2d 1 (1979). This court will not entertain academic questions. *Young* v. *Tynan,* 148 Conn. 456, 459, 172 A.2d 190 (1961).

"It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. *Connecticut State Employees Assn.* v. *AFSCME,* 188 Conn. 196, 199, 448 A.2d 1341 (1982); *Waterbury Hospital* v. *Connecticut Health Care Associates,* 186 Conn. 247, 440 A.2d 310 (1982)." *State* v. *Macri,* 189 Conn. 568, 569, 456 A.2d 1203 (1983).

The appeal is dismissed.

In this opinion the other judges concurred.