MARLA CHAMPAGNE *v.* RENE CHAMPAGNE
(AC 17829)

O'Connell, C. J., and Lavery and Spallone, Js.

Argued January 22—officially released July 27, 1999

*Cheryl Smith,* certified legal intern, with whom were *Carolyn Wilkes Kaas* and, on the brief, *Brent F. Basilico* and *Lisa M. Lawner,* certified legal interns, for the appellant (plaintiff).

*James W. Shea,* for the appellee (defendant).

*Opinion*

SPALLONE, J. The plaintiff, Marla Champagne, appeals from the postdissolution judgment of the trial court holding that the investment strategy of the current trustee was prudent under the very "conflicted circumstances" in which the trustee was operating. The plaintiff claims that the trial court improperly determined the amount of appreciation that the education trust would have realized had it been invested prudently since the date the separation agreement was executed, and improperly concluded that the "conflicting circumstances" should have any bearing on the reasonableness or prudence of the investment strategies. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The parties, the plaintiff and the defendant, Rene Champagne, were married on September 3, 1977, and their marriage was dissolved on January 4, 1993. At the time of the dissolution, the parties had four minor children.

The judgment of dissolution incorporated paragraph 11.4 of the parties' separation agreement, which provided for a trust for the benefit of the minor children. The trust was to be funded by the cash value of the defendant's life insurance policy. Paragraph 11.4 provided as follows: "The husband owns a life insurance policy with the Guardian Insurance Company, in the face amount of $500,000, with a cash value of approximately $60,000, which funds shall be placed in trust for

the benefit of the children, to be used for their education, with Philip DeCaprio as trustee."

At that time, the plaintiff was cotrustee of the defendant's life insurance policy. On September 13, 1995, and October 18, 1995, the trial court heard the parties postjudgment motions relative to the plaintiff's claim that the defendant was in contempt for his failure to place the funds in trust as ordered and the defendant's claim that the plaintiff was in contempt for her refusal as cotrustee of the life insurance policy to release the cash value to DeCaprio to be invested in the trust.

Neither party was found to be in contempt, and the plaintiff was ordered to resign as cotrustee of the insurance policy. The trial court determined that the amount of $129,552.31 should be placed in trust. The defendant appealed to this court, and the plaintiff cross appealed.

On December 24, 1996, this court reversed the trial court's decision, in part, and remanded the case for further proceedings. *Champagne* v. *Champagne*, 43 Conn. App. 844, 685 A.2d 1153 (1996). The case was remanded with instruction that the trial court hold "a hearing to determine the amount of growth the policy's cash value, as it existed on the date the separation agreement was executed, would have generated had it been prudently invested . . . ." Id., 850.

On June 12, 1997, the trial court conducted an evidentiary hearing to decide the issue on remand. After a full hearing where experts testified as to what amount of growth the cash value would have generated if the fund had been invested prudently, the trial court determined that the amount transferred to the trustee in May, 1996, to be the principal sum plus the growth that occurred to those funds while invested through the Guardian Insurance Company life insurance policy. The trial court determined that this sum was $80,508 and that

this sum represented a prudent and reasonable return on the original corpus of the trust.

The trial court heard conflicting testimony as to what constituted a prudent investment of the fund. It is the quintessential function of the fact finder to reject or accept certain evidence, and to believe or disbelieve any expert testimony. *State* v. *Blades*, 225 Conn. 609, 629, 626 A.2d 273 (1993). The trier may accept or reject, in whole or in part, the testimony of an expert offered by one party or the other. *Smith* v. *Smith*, 183 Conn. 121, 123, 438 A.2d 842 (1981); *Richard* v. *A. Waldman & Sons, Inc.*, 155 Conn. 343, 348, 232 A.2d 307 (1967).

"Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses." (Internal quotation marks omitted.) *Wellington Systems, Inc.* v. *Redding Group, Inc.*, 49 Conn. App. 152, 173–74, 714 A.2d 21, cert. denied, 247 Conn. 905, 720 A.2d 516 (1998).

Here, the trial court properly decided, on the basis of the evidence before it, that the sequestering in May, 1996, of $80,508 with the trustee was the proper amount to fund the trust at that point in time and properly represented the amount of growth generated from a prudent investment of the fund. We will not intervene.

Further, we hold that the trial court was correct in considering the "conflicted circumstances" of this case in its determination of a reasonable and prudent investment standard for the trust. The evidence clearly demonstrates that the parties did not operate in a climate free of acrimony, that the plaintiff refused to release funds until ordered to do so by the trial court and that the plaintiff attempted to remove the trustee. Such

behavior on the part of the plaintiff was a factor to be considered by the court in determining whether the trustee acted prudently.

"Whether the trustee is prudent in the doing of an act depends upon the circumstances as they reasonably appear to him at the time when he does the act and not at some subsequent time when his conduct is called in question." 1 Restatement (Second), Trusts § 174, comment (b), p. 379 (1959). In this case, there were many facts known to the trustee that comprised the "conflicted circumstances" of this case, and the trustee acted prudently within the framework of those circumstances.

In summation, we hold that the trial court properly determined that the trustee acted prudently in the manner in which he administered the trust and that the trial court correctly considered the "conflicted circumstances" of the case as one of the facts to be considered in evaluating the prudence of the trustee's actions.

The judgment is affirmed.

In this opinion LAVERY, J., concurred.

O'CONNELL, C. J., dissenting. I do not agree with the majority opinion because I do not feel that it addresses the problem before the court.

We remanded this case to the trial court "for a hearing to determine the amount of growth the policy's cash value, as it existed on the date the separation agreement was executed, would have generated *had it been prudently invested . . . .*" (Emphasis added.) *Champagne* v. *Champagne*, 43 Conn. App. 844, 850, 685 A.2d 1153 (1996). This issue required expert testimony. See *Santopietro* v. *New Haven*, 239 Conn. 207, 226, 682 A.2d 106 (1996) (expert testimony required where determination of standard of care requires knowledge beyond experience of ordinary fact finder).

At the hearing on remand, the plaintiff produced two expert witnesses. The first expert, Peter Berman,[1] testified that the original figure of $62,852.95 would have grown to $142,393.36, as of the date of the hearing if it had been invested prudently. The plaintiff's second expert, Carl Lindskog,[2] testified that the policy's cash value would have grown to $124,543.42 if it had been invested prudently. The defendant offered no expert witnesses. His sole witness was the trustee, Philip DeCaprio, a certified public accountant. DeCaprio testified that he did not consider himself to be an expert in investments, nor did he seek advice from an expert in deciding how to invest the funds. Rather, DeCaprio stated that he was given $80,508 in May, 1996, and put it into a savings account without doing anything further.

The trial court found that DeCaprio's decision to place the funds in a savings account, the safest possible investment, was not imprudent under the conflicted circumstances in which he was operating. The trial court therefore found that "the amount of growth in the cash value that the policy would have generated is the amount now in the fund, calculated as follows: $80,508 deposited on June 11, 1996, plus the interest

---

[1] Berman received a doctorate in economics from Johns Hopkins University and a bachelor of arts degree from Cornell University. He testified that he has over thirty years of professional service in financial markets, including senior professional experience with the board of governors of the Federal Reserve Bank of New York, with the Con Conference Board and in various capacities with Bank of America in both New York and San Francisco. For many years, Berman was a listed officer, specializing in asset allocation, with a New York stock exchange firm called Amnivest. According to Berman, Amnivest manages approximately one-half billion dollars in trust funds, mostly for labor union accounts. Berman testified that he has been the senior professor of finance at the University of New Haven for approximately ten years and has continued portfolio management and financial consulting activities through the current date.

[2] Lindskog testified that he is a senior vice president and trust department manager of New Haven Savings Bank, and that he has thirty-five years of experience in the trust business.

or dividends as invested by the trustee Philip DeCaprio . . . ." According to the majority opinion, this finding was not clearly erroneous. I cannot agree.

"The law governing the duties of a trustee respecting investment of trust assets is well settled. Generally, a trustee must act with the care of a prudent investor." *United States Trust Co.* v. *Bohart,* 197 Conn. 34, 48, 495 A.2d 1034 (1985). "The prudent investor rule . . . requires that: [A trustee] . . . observe how men of prudence, discretion and intelligence manage their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income, as well as the probable safety of the capital to be invested." (Internal quotation marks omitted.) *Jackson* v. *Conland,* 178 Conn. 52, 55, 420 A.2d 898 (1979).

In the present case, for the trial court to determine properly the amount of growth that the policy's cash value would have generated had it been invested prudently, it was required to consider expert testimony on the subject. The trial court apparently rejected the testimony of the plaintiff's two expert witnesses, which it had a perfect right to do. Disbelieving the plaintiff's experts, however, does not magically make DeCaprio's investment strategy, or lack thereof, prudent, nor does it convert him into an expert witness. Because DeCaprio was not proffered as an expert, and because he testified that all he did was put the $80,508 into a savings account, the trial court was required to consider additional evidence before making its determination. This court's remand remains unsatisfied.

In light of the above, I would remand this case for another hearing to reconsider the amount of growth that the policy's cash value, as it existed on the date the separation agreement was executed, would have generated had it been invested prudently.