FEDERAL DEPOSIT INSURANCE CORPORATION *v.*
GREGORY A. THOMPSON ET AL.
(AC 19118)

Foti, Spear and Healey, Js.

Argued September 14—officially released December 14, 1999

*John L. Laudati*, with whom, on the brief, was *P. Jo Anne Burgh*, for the appellants (named defendant et al.).

*David S. Hoopes*, with whom, on the brief, was *James B. Streeto*, for the appellee (substitute plaintiff).

*Opinion*

SPEAR, J. In this foreclosure action, the defendants Gregory A. Thompson and Rosemary G. Thompson[1] appeal from the judgment of the trial court finding a deficiency against them in the amount of $126,945.20. The defendants claim that the trial court improperly (1) rendered a deficiency judgment where the substitute plaintiff and its predecessors improperly caused a delay of more than two years between the foreclosure judgment and the deficiency judgment, (2) awarded interest for the entire time period between the foreclosure and deficiency judgments, (3) found that the defendants had not and could not have offered a deed in lieu of foreclosure and (4) denied the defendants' motion for reconsideration of the deficiency judgment. We disagree and affirm the judgment of the trial court.

The relevant and undisputed facts are as follows. On December 18, 1995, the original plaintiff, Federal Deposit Insurance Corporation (FDIC), obtained a judgment of strict foreclosure of the defendants' interest in a five unit apartment building. At the time of the foreclosure judgment, the trial court determined that

---

[1] A subsequent encumbrancer, the Bank of Southington, also was named as a defendant. We refer in this opinion to the Thompsons as the defendants.

the defendants' debt was $229,838.26.[2] The trial court then set the defendants' law day for April 26, 1996.

On April 11, 1996, the trial court opened the foreclosure judgment, upon the defendants' motion, and reset the law day. Thereafter, between July, 1996, and March, 1997, the trial court reopened the judgment and reset the law day on four other occasions—once upon motion by the defendants, twice upon motions by FDIC and once by stipulation of the parties. Neither party objected to the openings of the judgment because the parties were trying to settle the case.

After settlement negotiations failed, FDIC assigned its interest in the note and mortgage to BTD-1996 NPC 1, LLC (BTD), and, on FDIC's motion, the trial court substituted BTD as the plaintiff. BTD also attempted to negotiate a settlement of the debt and on July 9, 1997, moved to open the foreclosure judgment and reset the law day. The defendants did not object. The trial court granted BTD's motion and reset the law day for September 9, 1997.

After BTD's settlement negotiations also failed, it assigned its interest in the note and mortgage to LR2-A Limited Partnership (LR2-A).[3] Subsequently, the September 9 law day passed and on September 11, 1997, title in the defendants' property vested in BTD, which was the plaintiff at the time. On October 8, 1997, LR2-A filed both a motion to substitute itself as the plaintiff and a motion for a deficiency judgment.

On October 20, 1997, the trial court granted the motion to substitute LR2-A as the plaintiff. Before the trial court ruled on the deficiency judgment motion, however, the defendants filed both an objection to that

[2] The trial court also awarded FDIC attorney's fees of $2000, appraiser's fees of $2500 and a title search fee of $150.

[3] The record does not reflect the exact date BTD assigned its interest to LR2-A.

motion and their own motion requesting an extension so they could obtain a new appraisal of the subject property. The trial court granted the defendants' motion for an extension.

At the July 15, 1998 deficiency judgment hearing, the trial court found that the property had a fair market value of $160,000 at the time title vested. The trial court then found that the interest from the date of the foreclosure judgment to the deficiency judgment was $52,928.32. The trial court also found that the total deficiency, which included the interest, debt, attorney's fees and appraiser's fees, was $286,945.20. The defendants challenged the trial court's deficiency finding, but the court ruled that the defendants' challenge was untimely.

The trial court also rejected the defendants' claim that LR2-A unreasonably delayed seeking the deficiency judgment. The court then found that the defendants did not offer and could not have offered a deed in lieu of sale to stop their debt from accumulating. The court then subtracted the value of the property, $160,000, from the total deficiency, $286,945.20, and rendered a judgment against the defendants in the amount of $126,945.20. Thereafter, the defendants filed a motion for reconsideration. The trial court denied the defendants' motion, and the defendants appealed.

I

The defendants claim that (1) the trial court improperly found a deficiency because LR2-A and its predecessors improperly delayed obtaining the deficiency judgment, and (2) even if a deficiency judgment is proper, the improper delays precluded an award of interest for the time period between the foreclosure and deficiency judgments. Because the defendants advance the same argument in support of each claim, we will discuss them together.

The defendants' claims rely on the fact that the trial court incorrectly viewed their challenges to the deficiency and the award of interest, raised at the deficiency judgment hearing, as an untimely attack on the debt, which was established at the time of the foreclosure judgment. The defendants assert that the trial court misconceived their challenge, and that its misconception rendered its conclusions as to the existence and amount of a deficiency clearly erroneous. Moreover, because of that misconception, the defendants assert that the trial court failed to address properly their claim that no interest, or a reduced amount of interest, should be awarded for the time period between the foreclosure and deficiency judgments.

At oral argument, however, the defendants conceded that, at the deficiency judgment hearing, they had attacked the debt that was established at the time of the foreclosure judgment. This concession eliminates a key component of their argument. The trial court, therefore, correctly rejected the defendants' challenge because that claim should have been made prior to the foreclosure judgment. " 'Any claims by the defendant that . . . could have been made in the foreclosure proceeding cannot be relitigated at the deficiency hearing.' " *Vignot* v. *Bank of Mystic*, 32 Conn. App. 309, 313, 628 A.2d 1339 (1993).

We now turn to the defendants' claim that the trial court's fact-finding was clearly erroneous. "Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses." (Internal quotation marks omitted.) *Champagne* v. *Champagne*, 54 Conn. App. 321, 324, 734 A.2d 1048 (1999).

Although the trial court couched its discussion in terms of the laches doctrine,[4] it fully addressed and disposed of the defendants' claim that no deficiency judgment should have been rendered or, alternatively, that the interest should have been reduced or excluded because of the delay. The trial court discussed the causes of the delay between the foreclosure and deficiency judgments and concluded that the evidence did not establish inexcusable delay by LR2-A or its predecessors.

The court noted that the defendants never objected to any of the extensions of the law days because the parties were attempting to negotiate a settlement. Moreover, the defendants offer no analysis of the evidence in support of their claim that the trial court's factual conclusions were improper. After reviewing the evidence, we conclude that the court's factual findings were not clearly erroneous.

II

The defendants next assert that the trial court improperly found that the defendants had not and could not have offered a deed in lieu of foreclosure. This claim is also subject to a clearly erroneous standard of review. See id.

The defendants' claim is based on the trial court's findings that "these property owners never offered a deed in lieu of sale to stop the debt from accumulating.

---

[1] In its memorandum of decision, the trial court stated: " 'Laches consists of an inexcusable delay which prejudices the defendant. . . . Laches consists of two elements. First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant. . . . Absent prejudice to the defendant, the mere lapse of time does not constitute laches.' (Citations omitted; internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Voll*, [38 Conn. App. 198, 210, 660 A.2d 358, cert. denied, 235 Conn. 903, 665 A.2d 901 (1995)]. But the evidence does not establish such an inexcusable delay by [LR2-A] and its predecessors in interest."

Nor could they, given the existence of the second mortgage." At best, the testimony to which the defendants refer in support of their claim shows that they attempted to negotiate a surrender of the deed.[5] There was no evidence of an actual offer of the deed. Moreover, even

---

[5] The following colloquy occurred between the court, the named defendant and the defendants' counsel:

"The Court: I have one question. Did you ever just flat out offer to give the property back, or were your discussions always in [the] context of restructuring the loan?

"[The Named Defendant]: The Bank of Hartford in—we met with . . . the then principals. The first effort was to renegotiate the terms. They renegotiated on the basis of saying that I had to hold back or reduce the amount of money to the second mortgage holder. Thereafter, I indicated that I wanted to get rid of the whole property and I couldn't do it. I had heard—this was not my field as a lawyer, nor I had been a prior investor in real estate, but I had heard of a deed in lieu of foreclosure, and that is what I was attempting to do, and it—it didn't fly.

\* \* \*

"The Court: I just want to be clear, Mr. Thompson, were your discussions and attempted discussions that you had always about restructuring the loan or were they about just giving the key to the premises to the first?

"[The Named Defendant]: In the initial discussion with the initial holder, the Bank of Hartford—

"The Court: All right. . . .

"[The Named Defendant]: They would only entertain thoughts of restructuring.

"The Court: All right, so was the only—my question, just so I'm clear, the only discussion you had about turning the property back to a financial entity was the initial discussion with the Bank of Hartford. Is that correct?

"[The Named Defendant]: No, it—except for the last one, with Shelly Bernson.

\* \* \*

"The Court: I'm asking because this has relevance to the claimed precedent, which is a Superior Court case. And the—and the only time that it was discussed giving the property back was—was just before the foreclosure, is that correct?

"[The Named Defendant]: Yes, but Judge, I didn't have anybody to talk to. Every time I wanted to have somebody to talk to, there was a transfer, and we were going through financials and financials and financials. So it—it became very frustrating not having someone, a live body to say, let's talk. I mean when I had conversations with my attorney, a major accomplishment was—hey, we've got somebody to talk to. A major accomplishment at that point, and then before I know it, there was somebody else that we had to find to talk to.

if there had been an offer, the defendants tender no authority in support of the proposition that the plaintiff would have been required to accept such an offer. We hold that the trial court's finding that no deed was offered is not clearly erroneous. In light of this conclusion, it is not necessary to engage in an academic discussion of whether the defendants *could* have offered such a deed. See *DeCarlo* v. *Kolnaski*, 13 Conn. App. 325, 330, 536 A.2d 598 (1988).

## III

The defendants finally contend that the trial court improperly denied their motion for reconsideration. We disagree.

Our standard of review regarding challenges to a trial court's ruling on a motion for reconsideration is abuse of discretion. See *Biro* v. *Hill*, 231 Conn. 462, 468, 650 A.2d 541 (1994) (analyzing denial of plaintiff's motion for reconsideration under abuse of discretion standard). The trial court's memorandum of decision fully stated and met the arguments raised by the defendants at the deficiency judgment hearing. We, therefore, conclude that the trial court's decision is sufficiently supported by the evidence and that the court did not abuse its discretion in denying the defendants' motion for reconsideration.

The judgment is affirmed.

In this opinion the other judges concurred.

* * *

"[Defense Counsel]: Just an important clarification. I think you testified that there were two times you discussed turning the property over, once in the beginning with Bank of Hartford, and once in the end—

"[The Named Defendant]: With this lady from Boston, from Massachusetts.

"[Defense Counsel]: Just those two times, and in between there was no—in your testimony, there was no one to discuss it with?

"[The Named Defendant]: Right."