DEAN VAN NEST, JR. *v.* VIRGINIA K. KEGG
(AC 21541)

Dranginis, Bishop and Healey, Js.

Argued March 21—officially released June 4, 2002

*Dean G. Van Nest, Jr.*, pro se, the appellant (plaintiff).

*Catherine P. Whelan*, for the appellee (defendant).

*Opinion*

BISHOP, J. In this marriage dissolution action, the plaintiff, Dean Van Nest, Jr., appeals from the judgment of the trial court holding him in contempt and modifying the findings and orders of the original judgment of dissolution. The plaintiff claims that the court (1) improperly failed to order a mistrial or rehearing of the issues based on his allegations of ineffective assistance of counsel, (2) made improper findings regarding his obligation to maintain life insurance for the benefit of the defendant and their children, and (3) made improper evidentiary rulings regarding his job search activities. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. On March 15, 2000, the court dissolved the marriage of the plaintiff to the defendant, Virginia K. Kegg. At the time of the dissolution, the parties had two minor children, ages seven and eleven. A separation agreement of the same date was incorporated in the court's decree. The agreement provided, inter alia, that the plaintiff would make monthly payments of unallocated alimony and child support to the defendant, maintain medical insurance for the benefit

of his children, share with the defendant the children's unreimbursed medical expenses and provide for term life insurance, naming the children as beneficiaries in the amount of $100,000 per child.

On July 20, 2000, the plaintiff filed a motion for modification of the orders due to a substantial change in his financial circumstances.[1] Thereafter, the defendant filed an amended motion for contempt, alleging that the plaintiff was in wilful violation of the court's orders and seeking their enforcement.[2] On October 30, 2000, the court held an evidentiary hearing on both matters.

On December 14, 2000, the court issued a memorandum of decision holding the plaintiff in contempt for failure to maintain health and life insurance for the benefit of the children, modifying the orders of the original dissolution decree by reducing the plaintiff's alimony and child support obligation and his share of unreimbursed medical expenses, and affirming his obligation to maintain health and life insurance for the benefit of the children. On December 27, 2000, the plaintiff, proceeding pro se, filed a motion for reconsideration of the postjudgment findings and orders, and requested a rehearing due to ineffective assistance of counsel. The court denied the motion on January 15, 2001.

On January 9, 2001, the plaintiff, continuing to represent himself, filed a motion for articulation of the court's postjudgment findings and orders, and a motion for stay of judgment pending appeal. On February 27, 2001, the court issued a memorandum of decision granting in part and denying in part the motion for articulation,

---

[1] The plaintiff requested relief from the orders regarding alimony and child support, health and life insurance, and payment of unreimbursed medical expenses.

[2] The defendant alleged failure of the plaintiff to make all of the required alimony and child support payments, and failure to maintain health and life insurance for the benefit of his children.

and correcting, vacating and amending portions of the postjudgment findings and orders. The court denied the motion for stay pending appeal.

I

The plaintiff first claims that the court improperly denied his motion for reconsideration, and failed to order a mistrial or rehearing on the issues addressed in the postjudgment findings and orders. He claims that he received ineffective assistance of counsel because his attorney failed to disclose certain evidence at the October, 2000 hearing, inadequately presented other evidence, and unduly misled and confused the court. We are not persuaded.

In his motion, the plaintiff claimed that his counsel had failed to present evidence of or to explain adequately that he had continued to maintain health insurance for his minor children, had not transferred his life insurance policies to a third party, was not aware of the claimed arrearage on his unallocated alimony and child support payments, and that his job search log was necessary evidence of his good faith efforts to obtain employment. He thus claimed that the court misunderstood the facts, made incorrect findings with respect to those issues and improperly concluded in its December, 2000 memorandum of decision that he wilfully had violated the dissolution orders. In light of the alleged inaccuracies and improper conclusions, the plaintiff requested numerous modifications to the postjudgment findings and orders.

Approximately two weeks later, the plaintiff filed a motion for articulation asking the court to explain further the basis for its postjudgment findings that he had failed to maintain health insurance for his minor children, transferred his life insurance policies to a third party and failed to maintain life insurance policies for the benefit of his children. He also requested an articula-

tion of the findings that his alleged failure in matters of health and life insurance was wilful and without good cause and that he had been less than diligent in his efforts to obtain new employment, and of the court's reasons for ruling that his job search log should not be entered into evidence. Although the court denied the motion for reconsideration without comment, it responded to the motion for articulation in a detailed memorandum of decision modifying the postjudgment findings and orders. The memorandum addressed the issues raised in both of the plaintiff's motions.

"Our standard of review regarding challenges to a trial court's ruling on a motion for reconsideration is abuse of discretion." *Federal Deposit Ins. Corp.* v. *Thompson*, 56 Conn. App. 82, 89, 741 A.2d 972 (1999).

We first note that in his motion for reconsideration, the plaintiff requested a rehearing of the issues, not a mistrial. "This court is not bound to consider claimed errors unless it appears on the record that the question was distinctly raised . . . and was ruled upon and decided by the court adversely to the appellant's claim." (Internal quotation marks omitted.) *Mitchell* v. *Commissioner of Correction*, 68 Conn. App. 1, 7, 790 A.2d 463, cert. denied, 260 Conn. 903, 793 A.2d 1089 (2002). Because the plaintiff never requested that the court order a mistrial, he may not claim on appeal that the court improperly failed to do so. Accordingly, we decline to review this claim.

We also conclude that the court did not abuse its discretion in denying the motion for reconsideration and the request for a rehearing. Although the court denied the motion for reconsideration without comment, it addressed the issues raised therein in its response to the motion for articulation by correcting certain postjudgment findings, vacating others and further modifying the orders. Moreover, the plaintiff fails

to explain what would be accomplished by rehearing the issues. He points to no errors in the postjudgment findings and orders, as corrected and amended by the February, 2001 memorandum of decision, other than the alleged errors in his remaining claims on appeal, and thus provides no justification for further proceedings.

The plaintiff cites *Hauser* v. *Fairfield*, 126 Conn. 240, 242, 10 A.2d 689 (1940), for the proposition that the court improperly failed to hold a rehearing on the evidence. In *Hauser*, our Supreme Court ruled that additional evidence could be heard by the trial court where the evidence previously had not been presented due to inadvertence or mistake, and if such evidence was material and its absence created a serious danger of a miscarriage of justice. Id. We conclude, however, that the present case is distinguishable.

Here, most of the plaintiff's claims in the motion for reconsideration involved his attorney's alleged failure to present the available evidence effectively, not his total failure to produce the evidence. Moreover, insofar as the plaintiff's motion claimed that certain evidence was not presented, the court responded substantively to all of the issues raised in the motion in its February, 2001 memorandum of decision correcting, vacating and modifying its findings and orders. Accordingly, it cannot be said that the court abused its discretion or that denial of the plaintiff's request for a rehearing resulted in a miscarriage of justice. We therefore conclude that the court properly rejected the plaintiff's claim.

II

The plaintiff next claims that the court made improper findings and orders in its February, 2001 memorandum regarding his obligation to maintain life insurance for the benefit of the defendant and their children. He claims that the court improperly found that he was obligated to maintain a life insurance policy for the

benefit of the defendant, and that he had acted wilfully and without good cause when he allowed his life insurance policies for the benefit of his children to expire after he lost his job. We agree with the plaintiff only with respect to the finding concerning the defendant.

In its February, 2001 memorandum of decision, the court found that "the husband has failed to maintain life insurance on his life for the benefit of the wife in derogation of the order of the court dated March 15, 2000 . . . and that the findings and order of this court dated December 14, 2000, should be amended to reflect that fact." The court also found that the plaintiff had improperly permitted his life insurance policies for the benefit of his children to lapse, that his failure in that regard was wilful and without good cause, and that a finding of contempt was warranted. In connection with those findings, the court ordered the plaintiff to take steps to provide the required life insurance for the benefit of his children in accordance with the March, 2000 dissolution decree.

"Our standard of review in a domestic relations case is well settled. We will not substitute our judgment for that of the trial court and will not disturb an order of the trial court absent an abuse of discretion or findings lacking a reasonable basis in the facts." (Internal quotation marks omitted.) *Quindazzi* v. *Quindazzi*, 56 Conn. App. 336, 338, 742 A.2d 838 (2000).

Our review of the record reveals that the court's finding regarding the plaintiff's obligation to provide life insurance for the benefit of the defendant lacks a reasonable basis in the facts. The March, 2000 decree did not include such an order. Furthermore, the defendant's counsel conceded at oral argument that no such provision was included in the parties' separation agreement. Accordingly, the court improperly found in its February, 2001 memorandum of decision that the

plaintiff had failed to fulfill a life insurance obligation to the defendant in derogation of the order in the original decree. Although that finding is incorrect and should be deleted from the court's findings, it was harmless because it did not form the basis of the court's order.

We turn next to the plaintiff's claim that the court improperly found that he wrongfully allowed his life insurance policies for the benefit of his children to lapse after he lost his job, and that his failure to maintain those policies or to provide alternative coverage was wilful and without good cause. During the October, 2000 hearing, the plaintiff testified on direct examination that he had not continued the life insurance polices for his children after his termination because the premiums were too high. He explained: "[M]ost of the insurance was provided by my employer as part of my benefit package. . . . And when I was laid off, that coverage provided by the company discontinued and although I was—could have continued it, the premium was very high. They required a quarterly payment to continue it, and I did not have the resources to pay it." The plaintiff subsequently testified that he believed the policies had expired on the day he was terminated or the last day of June, 2000, but, at that time, he had not been certain of their expiration date. He also testified that he initially did not know the cost of continuing the policies and was not able to conclude until after a discussion with his employer at the end of July, 2000, that he could not afford the payments necessary to extend the policies. He further conceded that he had taken no steps, after learning that the policies had expired, to comply with the order of the court by obtaining other coverage.

In addition, the plaintiff testified that his severance payments did not commence until the last week in July, 2000, more than four weeks after his termination, and that during July, 2000, he had made two alimony payments to the defendant of $2000 each and two payments

to his attorneys for legal fees of more than $1000. Thereafter, he paid bills of more than $1100 for an August vacation with his children.

We conclude that the court's finding as to the plaintiff's discontinuation of life insurance policies for the benefit of his children is supported by the facts in the record. Although the plaintiff now claims that the reason he did not continue the life insurance policies was the delayed receipt of his first severance payment, which prevented him from making a timely payment to continue the policies, the record reveals otherwise. The plaintiff testified at the hearing that the company policies were too expensive to continue and that he simply failed to obtain other coverage. His testimony also indicates that he had sufficient funds to pay more than $1000 in legal fees in July, 2000, and more than $1100 for an August, 2000 vacation with his children. At no time did the plaintiff testify that the reason he discontinued the life insurance policies was due to his delayed receipt of the first severance payment. Accordingly, the record supports the court's finding that the plaintiff's violation of the order requiring him to continue the life insurance policies for the benefit of his children was wilful and without good cause.

### III

The plaintiff finally claims that the court improperly excluded evidence of his job search activities and, consequently, concluded that he had been less than diligent in his efforts to obtain new employment, thus unduly prejudicing him with regard to modification relief. We disagree.

During the October, 2000 hearing, the plaintiff's counsel attempted to admit into evidence a series of documents consisting of e-mails that the plaintiff had sent to prospective employers and letters he received in reply. Defense counsel objected to the letters on the

ground of hearsay, but did not object to the e-mails authored by the plaintiff. The plaintiff's counsel argued that the reply letters also should be entered into evidence because they were not offered for the truth of the matter asserted, but were necessary to show that the plaintiff had been making an adequate effort to find new employment. The court ruled that only the plaintiff's correspondence would be admitted into evidence, except in cases where the e-mail document itself contained the response. The plaintiff's counsel then observed that under the court's ruling, only two of the pages offered into evidence would be excluded.

The plaintiff's counsel next attempted to enter into evidence a log of contacts with potential employers that the plaintiff had created in response to the defendant's request for production. The log included the names of individuals the plaintiff had e-mailed, spoken to on the telephone or interviewed with. Defense counsel sought to exclude the log because it was created expressly for the hearing and was based on backup documents that the defendant did not have available in court and about which he consequently could not be cross-examined. The court sustained the defendant's objection.

Thereafter, the plaintiff's counsel continued his direct examination of the plaintiff and elicited substantial information on his efforts to seek employment. Counsel asked the plaintiff how many contacts he had made with prospective employers and, before the plaintiff completed his answer, handed him a document to refresh his memory. After looking at the document several times during the colloquy that followed, the plaintiff revealed that he had made approximately ten employment contacts between the time of his termination and July 1, 2000, close to 100 contacts during the month of July, somewhat fewer contacts in August due to prescheduled vacation time with his children and approximately 100 contacts in September. The plaintiff

also testified that he had sent an average of twenty e-mails per week to prospective employers, made ten to thirty telephone calls, and participated in twenty interviews and two or more telephone video conferences since the termination of his employment. In addition, the plaintiff testified that he had one present prospect that might result in an offer in the near future, several others that might come to fruition in the more distant future and two scheduled interviews in the coming week with two different companies.

"It is well settled that [t]he trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . [Its] ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make *every reasonable presumption* in favor of upholding the trial court's ruling, and only upset it for a *manifest abuse of discretion.* . . . Moreover, evidentiary rulings will be overturned on appeal only where there was . . . a showing by the defendant of substantial prejudice or injustice." (Emphasis in original; internal quotation marks omitted.) *State* v. *Nieves*, 69 Conn. App. 96, 100–101, 793 A.2d 290, cert. denied, 260 Conn. 930, 798 A.2d 972 (2002). "[T]he defendant . . . must show that it is more probable than not that the erroneous action of the court affected the result." (Internal quotation marks omitted.) *State* v. *Collins*, 68 Conn. App. 828, 831, 793 A.2d 1160, cert. denied, 260 Conn. 941, 835 A.2d 58 (2002).

Our review of the record reveals that despite the court's evidentiary rulings, the plaintiff's counsel was able to present substantial evidence regarding the plaintiff's job search activities. Counsel himself noted that the court's first ruling permitted all of the plaintiff's e-mails to be entered into evidence and that the only documents excluded were two letters from prospective employers in reply to the e-mails.

As for the second ruling on admission of the plaintiff's job search log, the court permitted counsel to hand the plaintiff a document to refresh his memory before answering questions as to the number of weekly contacts he had made with prospective employers, including e-mails, and the number of telephone calls, interviews and video conferences in which he had participated since the termination of his employment.[3] We therefore conclude that the court did not abuse its discretion in ruling that the letters and job search log were inadmissible.

The plaintiff argues that the exclusion of the proffered evidence caused the court improperly to conclude that he had been less than diligent in his efforts to obtain new employment, thus "unduly prejudicing his standing with regard to modification relief." He argues that in the February, 2001 memorandum of decision, the court made nine modifications to the December, 2000 findings and orders, and that those modifications show the court's "proclivity to 'substantial prejudice' as a result of the considerable confusion" at the October, 2000 hearing.

We conclude that the plaintiff has not established that he was substantially prejudiced by the court's evidentiary rulings. His contention that the February, 2001 modifications indicated a general state of confusion on the part of the court during the October, 2000 hearing does not pertain to the more specific issue raised here of how, exactly, he may have been prejudiced by the court's evidentiary rulings. Furthermore, the court's postjudgment orders recognized the plaintiff's change in financial circumstances by significantly reducing his monthly alimony and child support obligation as well as his share of unreimbursed medical expenses. Accord-

---

[3] It is not clear from an examination of the transcript if the document used by the plaintiff to refresh his memory was the job search log.

ingly, the plaintiff has not met his burden of showing that he was adversely affected by the rulings.

The judgment is affirmed.

In this opinion the other judges concurred.