******************************************

    The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

    All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

    The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

R. A. *v.* R. A.*
(AC 41990)

Bright, C. J., and Elgo and Clark, Js.

*Syllabus*

The defendant appealed to this court from the judgment of the trial court dissolving her marriage to the plaintiff and making certain orders regarding the parties' finances and custody of the parties' minor children. *Held*:

1. The defendant's claim that the trial court improperly included her minor child from a previous relationship in the custody order without accounting for the rights of the minor child's biological father was moot: because the biological father was a party to a subsequent proceeding in which the plaintiff was granted custody of the minor child, there was no practical relief that could be afforded to the defendant, and this court lacked subject matter jurisdiction to consider the defendant's claim.

2. The trial court did not abuse its discretion in crafting its visitation order, which required the parties to collaborate on the terms of visitation: the court's order was supported by the record, particularly the testimony of a family relations counselor, which the trial court was free to credit.

3. The defendant could not prevail on her claim that the trial court relied on inaccurate information concerning the plaintiff's finances in fashioning its child support orders: because the court's order completely absolved her of any child support obligations, the defendant did not demonstrate any harm resulting from the allegedly improper order; moreover, because the court was presented with significant evidence regarding the parties' relative financial standing, employment histories, and future prospects, and it considered the possible costs that the defendant would incur to visit her children following their proposed relocation, this court would not disturb the child support orders.

Argued April 5—officially released December 21, 2021

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of New London at Norwich and tried to the court, *Carbonneau, J.*; judgment dissolving the marriage and granting certain other relief, from which the defendant appealed to this court. *Appeal dismissed in part*; *affirmed*.

*R. A.*, self-represented, the appellant (defendant).

*Logan A. Carducci*, with whom, on the brief, was *Keith J. Anthony*, for the appellee (plaintiff).

*Opinion*

ELGO, J. The defendant mother, R. A.,[1] appeals from the judgment of the trial court dissolving the parties' marriage and granting the plaintiff father, R. A., sole custody of their minor children. On appeal, the defendant contends that the court (1) improperly included the defendant's child from a previous relationship in the custody order, (2) inequitably set forth procedures for the parties to collaborate on a visitation scheme, and (3) relied on inaccurate information concerning the plaintiff's finances in crafting its child support order.[2] We dismiss as moot the defendant's appeal as to her first claim and affirm the judgment of the trial court in all other respects.

The following facts and procedural history are relevant to this appeal. The parties met while the plaintiff was stationed in Hawaii and serving in the United States Navy. Shortly after meeting, the parties married on February 23, 2011. At that time, the defendant had custody of O, her minor child from a previous relationship.[3] The parties thereafter had three children together: T, Q, and A.

In April, 2016, the plaintiff was transferred from Hawaii to Naval Submarine Base New London in Groton (naval base). The parties then purchased a house in the state of Washington, where the defendant and the four minor children resided for approximately six months. The defendant and the minor children subsequently relocated to Connecticut and moved into the plaintiff's apartment, while the plaintiff resided at the naval base barracks.

On December 23, 2016, an altercation ensued between the parties at the naval base that culminated in a motor vehicle collision.[4] While the parties characterized that altercation differently at trial, the court credited the plaintiff's testimony that the defendant "intentionally struck his car with hers in order to prevent him from leaving the scene." Following that incident, on December 30, 2016, the plaintiff filed an application for an emergency ex parte order of custody. The plaintiff then commenced the present dissolution action on January 11, 2017.

The defendant filed a motion to dismiss on January 20, 2017, arguing that Connecticut lacked jurisdiction over the parties pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (child custody act), General Statutes § 46b-115 et seq., and citing the existence of a pending dissolution proceeding in Hawaii. On January 23, 2017, the court, *Connors, J.*, held a hearing on both the motion to dismiss and the issue of emergency custody, at which both parties testified. The court then denied the motion to dismiss and took temporary emergency jurisdiction under the child custody act. With respect to the plaintiff's application for an

emergency ex parte order of custody, the court awarded the parties joint legal custody but granted the plaintiff primary residence with the defendant able to participate in supervised visitation.[5] Following correspondence with the trial judge in the aforementioned Hawaii proceedings, the court took exclusive jurisdiction during a hearing on March 16, 2017, and sustained the plaintiff's objection to the defendant's prior motion to dismiss. Throughout the spring and summer of 2017, the defendant filed several motions requesting custody and increased access to the children, all of which were denied.

At the time of those proceedings, O was the subject of a concurrent neglect proceeding in the juvenile court of this state. On April 21, 2017, the court, *Driscoll, J.*, issued an order vesting the plaintiff with temporary custody of O. That order was entered into evidence as a full exhibit at trial in the present case.

Trial in the present matter commenced on February 23, 2018, and concluded on May 22, 2018. The plaintiff was represented by counsel, while the defendant was self-represented. On the final day of trial, the court, *Carbonneau, J.*, referred to the concurrent juvenile matter involving O, stating: "I was aware that Judge Driscoll had made his decision in the juvenile court case involving [the defendant]. And that I believe he has deferred all further action to [this] court, to decide in the dissolution file. I may be mistaken. I have not yet received a copy of his decision. So if there's something that we need to do or get from Judge Driscoll and [the juvenile court], I certainly will do that. But I'm [going to] operate on the notion that my orders will be sufficient to carry through and complete the functions here today." When the presentation of evidence concluded later that day, both parties agreed to present their final arguments to the court in written form.

The court issued a memorandum of decision on August 7, 2018, in which it rendered judgment dissolving the marriage and awarding the plaintiff custody of the minor children. With respect to O, the court stated in a footnote: "[The defendant] has an older child that is not issue of this marriage. This child was the subject of a [juvenile court] proceeding . . . [in which the court, *Driscoll, J.*,] found [O] to be neglected on January 18, 2018. [The court] vested guardianship and physical custody in [the plaintiff]. When [this] court refers to 'the children' in this decision, [O] is included."

The court also entered several orders concerning the defendant's child support obligations and visitation rights. More specifically, the court granted the defendant "access with the minor children under such conditions to which she and [the plaintiff] may reasonably agree in writing, traditional or electronic." In that order, the court listed several examples of "reasonable and appropriate telephonic and electronic contact," in-

structed the plaintiff to take steps to facilitate the defendant's contact with the minor children, and set forth a forty-eight hour notice requirement for the defendant's requests for visitation. The court also ordered that the defendant was not required to pay child support for any of the minor children, apart from outstanding arrearage payments regarding O. This appeal followed.[6]

I

The defendant first claims that the court improperly included O in the custody order without accounting for the rights of O's biological father. We conclude that this claim has been rendered moot by subsequent orders of the Superior Court concerning the custodial status of O.

The following additional procedural history is relevant to our resolution of this claim. While this appeal was pending, the defendant brought a separate action on February 19, 2019, seeking custody of O. Both the plaintiff and O's biological father, B, were parties to that action. The matter proceeded to trial over the course of two days in March and June, 2021. On June 10, 2021, the court, *Shluger, J.*, rendered judgment, in which the court issued orders granting sole legal and physical custody of O to the plaintiff. The court specifically found that B "[has] no interest in parenting [O]" and that he "attended but did not actively participate in the trial." Although the defendant subsequently moved for a waiver of appeal fees, the court, *Newson, J.*, denied that motion the day it was filed.

On October 19, 2021, this court ordered the parties to submit supplemental briefs on the issue of whether the court's June 10, 2021 orders rendered the defendant's claim with respect to the custody of O moot. The plaintiff filed his supplemental brief on November 1, 2021; on the same day, the defendant requested a three week extension, which this court denied. This court then ordered that the defendant file her supplemental brief no later than November 8, 2021. The defendant filed that brief on November 8, 2021. Although it contains a lengthy list of perceived procedural faults and inequities associated with her various child neglect and family court proceedings, it does not substantively address whether Judge Shluger's June 10, 2021 orders rendered her claim regarding the custody of O moot.

"When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot. . . . It is axiomatic that if the issues on appeal become moot, the reviewing court loses subject matter jurisdiction to hear the appeal. . . . It is a [well settled] general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, discon-

nected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal." (Internal quotation marks omitted.) *Dempsey* v. *Cappuccino*, 200 Conn. App. 653, 657, 240 A.3d 1072 (2020).

In his supplemental brief, the plaintiff argues that Judge Shluger's June 10, 2021 order supersedes Judge Carbonneau's August 7, 2018 custody order and, accordingly, deprives the defendant of any practical relief that this court could otherwise grant. We agree. The defendant's contention that B was not adequately represented when Judge Carbonneau issued his custody order was directly remedied by B's status as a party to the custodial matter before Judge Shluger.[7] There is accordingly no relief that this court can offer the defendant. We therefore conclude that the defendant's claim regarding the custody of O is moot.

## II

The defendant also claims that the court's visitation orders were inequitable insofar as they required the parties to work collaboratively on structuring and scheduling visits.[8] The crux of the defendant's claim is that, by requiring both parties to agree on the terms of visitation, the court's orders do not adequately safeguard against the plaintiff unilaterally refusing the defendant access to her children. We do not agree.

"We utilize an abuse of discretion standard in reviewing orders regarding custody and visitation rights . . . . Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference." (Internal quotation marks omitted.) *Merkel* v. *Hill*, 189 Conn. App. 779, 787–88, 207 A.3d 1115 (2019). Our review of the record indicates that the court had a well established basis to fashion its visitation order as it did. As the plaintiff points out, the court heard directly from both the parties themselves and individuals who were familiar with the parties, their relationship with each other, and their interpersonal skills. In particular, the trial court credited the testimony of Lisa Reveruzzi, a family relations counselor who thoroughly investigated the matter and presented her recommendations at trial. During her investigation, Reveruzzi interviewed several social workers who had been involved with the parties, as well as Karen Goldfinger, a therapist whom the defendant met with on three occasions. Reveruzzi's testimony highlighted the plaintiff's proactive involvement in parenting the minor children, and contrasted it with her concern regarding the defendant's judgment. Reveruzzi specifically expressed her concern that "if [the defendant] was to have access with the children unsupervised, that there would be a risk that the children would not be returned to [the plaintiff]."

On the basis of her experience with the parties, Reveruzzi recommended that the plaintiff be the one to facilitate visitation of the minor children. The court, having observed Reveruzzi's testimony in person and weighed her input against that of other witnesses and evidence, chose to adopt her recommendations. Because the court was free to credit that testimony, we conclude that the court did not abuse its discretion in crafting its visitation order.

### III

Last, the defendant claims that the court relied on inaccurate information concerning the plaintiff's finances in fashioning its child support orders. Specifically, the defendant alleges that the court failed to consider the plaintiff's receipt of certain government benefits. In response, the plaintiff contends that the defendant has not demonstrated any harm suffered as a result of the court's allegedly improper order. We agree with the plaintiff.

"The scope of our review of a trial court's exercise of its broad discretion in domestic relations cases is limited to the questions of whether the [trial] court correctly applied the law and could reasonably have concluded as it did. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Citation omitted; internal quotation marks omitted.) *Olson* v. *Mohammadu*, 310 Conn. 665, 671, 81 A.3d 215 (2013). "The [appellant] is entitled to relief from the court's improper rulings only if it was harmful. . . . To meet this burden in a civil case, the appellant must show that the ruling would likely affect the result." (Citation omitted; internal quotation marks omitted.) *Sander* v. *Sander*, 96 Conn. App. 102, 118, 899 A.2d 670 (2006) (appeal from judgment of dissolution challenging educational support order); see also *Van Nest* v. *Kegg*, 70 Conn. App. 191, 198, 800 A.2d 509 (2002) (errant factual finding in dissolution action "harmless because it did not form the basis of the court's order").

The child support order in question provides in relevant part that "[the defendant] shall pay zero support for the minor children, issue of this marriage. [The plaintiff] shall pay 100 percent of any unreimbursed health-related and work-related day care costs for the minor children. . . . [The defendant] shall pay zero child support for her older son currently under the guardianship of [the plaintiff]." Given the plain mandate of that order, it is clear that the court's reliance on even inaccurate information did not harm the plaintiff, as that order completely absolves her of *any* child support obligations.

Moreover, the court had before it significant evidence and testimony regarding the parties' relative financial

standing, employment histories, and future prospects that led to its determination. In particular, the court emphasized the possible costs that the defendant would incur to visit her children following their proposed relocation to Florida with the plaintiff and noted that reducing the defendant's prospective child support obligations to zero would best serve the interests of fairness and equity. On the basis of this record, we see no reason to disturb the court's child support orders.

The appeal is dismissed only as to the defendant's claim that O was improperly included in the custody order; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

* In accordance with federal law; 18 U.S.C. § 2265 (d) (3) (2018); we decline to identify any party protected or sought to be protected under a protective order or a restraining order that was issued or applied for, or others through whom that party's identity may be ascertained.

[1] At all times, the defendant has appeared in a self-represented capacity.

[2] Although the defendant has raised additional claims on appeal, she has not adequately briefed those claims. See *Seaport Capital Partners, LLC* v. *Speer*, 202 Conn. App. 487, 490, 246 A.3d 77 (adequate briefing is necessary for appellate review), cert. denied, 336 Conn. 942, 250 A.3d 40 (2021). Accordingly, we do not consider the merits of those claims. See *Altraide* v. *Altraide*, 153 Conn. App. 327, 330 n.2, 101 A.3d 317, cert. denied, 315 Conn. 905, 104 A.3d 759 (2014).

[3] At trial, O's biological father, B, was mentioned only twice. When asked whether B was "involved" in O's life, the plaintiff responded in the negative. The defendant later noted B's child support obligations with respect to O. Neither party referenced the scope of B's parental rights as to O at any time.

[4] The plaintiff testified that, at the time of the altercation, security personnel at the naval base had instituted a Military Protective Order (protective order) stemming from the defendant's repeated attempts to contact the plaintiff's command. As the court clarified in its memorandum of decision, "[t]he [protective order] ha[d] no binding effect on [the defendant] because she is a civilian not subject to Navy discipline."

[5] The trial court, *Carbonneau, J.*, found that the defendant nevertheless arrived at the plaintiff's apartment—where the children were located—that evening. On January 25, 2017, the plaintiff moved separately for a temporary restraining order against the defendant, which was granted later that day.

[6] On November 12, 2019, the court, *Shluger, J.*, granted the plaintiff's October 29, 2019 application for an emergency ex parte order of custody of the four children. The defendant filed an amended appeal with this court to encompass that order on December 2, 2019, pursuant to Practice Book § 61-9, and this court granted the defendant's motion to file a supplemental brief on February 5, 2020. Although this court subsequently granted the defendant several extensions of time to do so, the defendant never filed her supplemental brief. As a result, we deem abandoned the defendant's amended appeal with respect to the ex parte order of custody. See, e.g., *Clelford* v. *Bristol*, 150 Conn. App. 229, 235, 90 A.3d 998 (2014) ("as a result of the failure to adequately brief the ruling of the court appealed from, we conclude that the defendant abandoned his sole appellate claim").

[7] We are aware that, on November 12, 2021, the defendant filed a late appeal (Docket No. AC 45119) of Judge Shluger's June 10, 2021 order. Irrespective of the outcome of that appeal, we reiterate that the alleged procedural defect with Judge Carbonneau's order—the absence of B from the proceedings—was still remedied by B's presence at the hearing before Judge Shluger. Accordingly, our analysis of the mootness issue is unaffected by the pendency of that late appeal.

[8] The defendant also claims that the visitation order failed to create a framework for visitation between O and his half-siblings, who are the additional biological children of B. As discussed in part I of this opinion, O's status with respect to the parties is controlled by Judge Shluger's June 10, 2021 orders. We therefore do not consider that argument when assessing the propriety of Judge Carbonneau's orders.